## Keller, Appellant, *v.* Scranton.

*Municipalities—Municipal debt—Increase of debt—Constitutional law.*

Unliquidated damages to landowners from a public improvement are a debt within section 8, article 9 of the constitution, relating to the increase of debt of municipalities.

A municipality already in debt up to its constitutional limit of two per cent on the assessed value of the property, cannot without a vote of the electors enter into a contract for the building of a viaduct without expense to itself, but which will make it liable for damages to the owners of abutting land.

The constitution is to be understood, prima facie at least, as using words in their general and popular sense unless clearly technical in their nature.

Debt and indebtedness in section 8, article 9 of the constitution are not used in any technical way, but in their broad general meaning of all contractual obligations to pay in the future for considerations received in the present.

The taking of land by the right of eminent domain, although classified as a tort, is outside of the principle that makes municipalities liable for their wrongful acts without regard to their indebtedness.

Argued Feb. 26, 1901. Appeal, No. 35, Jan. T., 1901, by plaintiff, from decree of C. P. Lackawanna Co., Jan. T., 1901, No. 1, on bill in equity in case of Luther Keller v. City of Scranton, the Delaware, Lackawanna and Western Railroad Company and the Scranton Railway Company. Before Mc-COLLUM, C. J., MITCHELL, BROWN, MESTREZAT and POTTER, JJ. Reversed.

Bill in equity for an injunction, to restrain the construction of a viaduct.

From the record it appeared that the Scranton Railway Company and the Delaware, Lackawanna and Western Railroad Company on August 24, 1900, submitted a proposal to the city of Scranton to pay the cost of a viaduct to avoid a grade crossing, provided that the city would build the viaduct and pay all the damages to abutting owners. Subsequently the city passed an ordinance accepting the offer of the railroad companies. The plaintiff, who was a taxpayer, filed this bill to restrain the construction of the viaduct.

KELLY, J., filed an opinion in which he found, inter alia, the following facts:

6. The viaduct which the city councils of Scranton propose to authorize by the ordinance of November 17, 1900, will carry the tracks of the Scranton Railway Company over the tracks of the Delaware, Lackawanna and Western Railroad Company and will eliminate the present grade crossing of said tracks on Lackawanna avenue, substituting an overhead crossing for the grade crossing. The present grade crossing is a dangerous crossing and a great obstruction to the travel of the people, not only on the tracks of the Delaware, Lackawanna and Western Railroad Company and on the tracks of the Scranton Railway

Company, but the general travel of the public on West Lackawanna avenue. The said viaduct will be a great public improvement.

7. The erection of the viaduct will cause damage to the abutting property owners, and the amount which may be recoverable by them may aggregate the sum of $100,000, whenever the same may be liquidated according to law.

8. The damages which may result to the property owners by the construction of the viaduct are unliquidated damages, and their amounts have not as yet been ascertained.

9. At the time the ordinance which is set forth in the bill was adopted, to wit: November 17, 1900, the debt of the city of Scranton was $582,000.

10. Of the above debt of $582,000, the sum of $299,000 had been approved and authorized by a vote of the electors, and the balance of the debt, to wit: $283,000, had been incurred without a vote of the electors.

11. On the above date, to wit: November 17, 1900, the assessed value of the taxable property within the city of Scranton was $23,121,000, and two per cent thereof is $462,420.

12. The damages resulting from the construction of the proposed viaduct will not create an indebtedness which added to the present indebtedness of the city equals seven per cent of the assessed valuation of the taxable property.

13. The erection of the proposed viaduct will be of great advantage to the Delaware, Lackawanna and Western Railroad Company, the Scranton Railway Company and to the general public.

14. Under the terms of the ordinance above set forth the making of the detail plans and specifications is left to the discretion of the city engineer subject to the approval of the engineers of the Delaware, Lackawanna and Western Railroad Company and the Scranton Railway Company.

The court dismissed the bill.

*Error assigned* was the decree dismissing the bill.

*I. H. Burns* and *H. M. Streeter*, of *Streeter & Lowry*, for appellant.—The creation of a debt and the permitting one to accrue is the same thing: McCracken v. City of San Francisco, 16

Cal. 591 ; Litchfield v. Ballou, 114 U. S. 190 ; City of Spring-
field v. Edwards, 84 Ill. 626 ; Law v. People, 87 Ill. 385 ; Prince
v. City of Quincy, 105 Ill. 138.

Indebtedness means an agreement of some kind by the city
to pay money where no suitable provision has been made for
the prompt discharge of the obligation imposed by the agree-
ment : Sackett v. New Albany, 88 Ind. 473 ; Lake County v.
Rollins, 130 U. S. 662 ; City of Erie's App., 91 Pa. 398.

The words "debt" and "indebtedness" should be construed
as covering all things within the object and intent of the framers
of the constitution and statutes : Endlich on Interpretation of
Statutes, sec. 76 ; Balliet v. Brown, 103 Pa. 546 ; Pike County
v. Rowland, 94 Pa. 238 ; Pepper v. Phila., 181 Pa. 566 ; Mayor
and City Council of Baltimore v. Gill, 31 Md. 375.

*A. A. Vosburg,* city solicitor, and *Everett Warren,* of *Willard,
Warren & Knapp,* with them *Joseph S. Clark,* for appellee.—
The claims of the property owners for unliquidated damages
which may result from the construction of the viaduct are not
debts within the meaning of the constitutional provision : Wade
v. Oakmont Boro., 165 Pa. 479 ; Appeal of City of Erie, 91 Pa.
398 ; Lehigh Coal & Navigation Co.'s App., 112 Pa. 360 ; Fisher
v. Consequa, 2 Wash. C. C. 382 ; Pepper v. Philadelphia, 181
Pa. 566.

OPINION BY MR. JUSTICE MITCHELL, July 17, 1901 :

The single question which needs discussion is whether a mu-
nicipality, already in debt up to its constitutional limit of two
per cent on the assessed valuation of its property, can without
a vote of the electors, enter into a contract for the building of
a viaduct without expense to itself, but which will make it
liable for damages to the owners of abutting land. Or to re-
duce the question to a briefer and more general form, are un-
liquidated damages to landowners from a public improvement,
a debt within section 8, article 9, of the constitution ?

The language of the section is, " the debt of any county, city,
borough, township, school district or other municipality or in-
corporated district, except as herein provided, shall never ex-
ceed seven per centum upon the assessed value of the taxable
property therein, nor shall any such municipality or district in-

cur any new debt, or increase its indebtedness to an amount exceeding two per centum upon such assessed valuation of property, without the assent of the electors thereof at a public election in such manner as shall be provided by law."

The learned judge below found as facts that " the erection of a viaduct will cause damage to the abutting property owners, and the amount which may be recoverable by them may aggregate the sum of $100,000 whenever the same may be liquidated according to law." And that the present debt of the city was already beyond two per cent of the assessed valuation. He further found as conclusions of law that the city of Scranton had no right to increase its present indebtedness without first obtaining the consent of the electors, but that the incurring of this liability for damages to the property owners was not the creation of a debt or the incurring of an indebtedness within the meaning of the constitution.

This conclusion was reached upon the view that the word " debt " in the section of the constitution in question is used in a technical sense which does not include unliquidated damages sounding in tort. We are unable to assent to this view.

The constitution is to be understood, prima facie at least, as using words in their general and popular sense, unless they are clearly technical in their nature. While the word " debt " has a technical use of somewhat more limited signification than its common meaning, yet it is not naturally or usually a technical word. And it is to be noted that the constitution uses in immediate and synonymous connection, the word " indebtedness " which is of wider and even less technical significance. On this point the purpose and intent of the constitutional provision are conclusive. It is part of the open history of the times that many municipalities in haste to get the advantages enjoyed by older and wealthier communities entered recklessly into all kinds of projects under the name of public improvements, and in a few years found themselves like heirs to an estate burdened with post obits at ruinous rates, on or beyond the verge of bankruptcy. At the time of the framing of the constitution the subject was fresh in the public mind, notably in the cases of county and city bonds in aid of railroads, etc., in the western states, as found in the reports of the Supreme Court of the United States. Pennsylvania was not without its own experience two genera-

tions ago in the default of interest, nobly atoned for in the dark days of depreciated currency during the civil war by the payment of all its obligations in gold even though not so specified in the bond.   The constitutional provision is intended as a restraint on this spendthrift tendency, to curb the extravagance of municipal expenditure on credit, to prevent municipalities from loading the future with obligations to pay for things the present desires but cannot justly afford, and in short to establish the principle that beyond the defined limits they must pay as they go.   No limit is fixed to expenditure for which present means of payment are provided (Erie's Appeal, 91 Pa. 398), but a peremptory prohibition is put on expenditure on credit beyond the prescribed bounds.   Debt and indebtedness in the section in question are not used in any technical way, but in their broad general meaning of all contractual obligation to pay in the future for considerations received in the present.

It may be that in other sections of the instrument, the context may indicate that the same words are used in a more limited and technical sense.   It will be time enough to consider those questions when they arise.   For the present it is sufficient that the meaning of section 8 is clear.

It is true that the constitution does not exempt municipalities, how great soever their indebtedness, from liability for wrongful and tortious acts.   But it does not authorize the voluntary assumption of obligation to pay money by the scheme of a tort. The distinction between real or unpremeditated torts and voluntary acts under the technical name of torts, done by agreement for the accomplishment of a purpose prohibited to be done by contract, is clear and substantial.   And that is what we have here.   The taking or injury to land by eminent domain is not a tort in the sense of a wrongful act.   When the broad distinction of actions into those ex contractu and those ex delicto was established damages from the exercise of eminent domain were unknown.   When they came into existence they did not strictly fit into either class, but as they were certainly not founded on express contract with the landowner, they were put in the only other class, as torts.   But when as in the present case the act which is called a tort is done under a contract, and the assumption of the consequent damages is an express term of such contract, we have a perfectly clear case outside of the principle that makes

KELLER *v.* SCRANTON.

municipalities liable for their wrongful acts, without regard to their indebtedness, and within the constitutional prohibition of a contractual obligation to pay in future for a consideration in the present.   We are therefore obliged to hold that the ordinance in question is void as increasing the indebtedness of the city of Scranton beyond its constitutional limits.   The other objections to the ordinance are not sustained.

The learned judge below found, inter alia, that while the debt of the city of Scranton was above the two per cent limit yet part of it had been authorized by a vote of the electors, and if this part should be excluded from the computation, the damages under the ordinance for the viaduct would not increase the debt beyond the limit, but he held that the whole debt, authorized by vote or not, must be taken together in computing the two per cent.   It is now suggested by the appellees that this ruling was incorrect, and if it should be reversed, the final decree could be affirmed though for different reasons from those of the court below.   This, however, could not be done on the present appeal.   The ruling was in favor of the appellant, and of course is not assigned for error.   The question, therefore, is not raised by the record as it is now before us for action, and we express no opinion upon it.

It is not improper to say that we have reached our conclusion in this case with reluctance.   The improvement intended is one of great importance and value to the public in doing away with a dangerous grade crossing, and the terms are very advantageous to the city.   But the bar of the constitutional prohibition is clear and we may not permit it to be evaded.

Decree reversed and bill directed to be reinstated and injunction issued as prayed.   Costs to be paid by appellees.