# Lesser *v.* Warren Borough, Appellant.

*Municipalities—Municipal indebtedness—Seven per cent. limit—Constitution, Art. IX, Sec. 8—Purchase of water works—Bonds with limited liability.*

Bonds issued by a borough in accordance with the provisions of the Act of May 31, 1907, P. L. 355, as amended by the Act of April 22, 1909, P. L. 135, to purchase a water works, secured solely by the water works without any further liability on the part of the borough, will constitute an indebtedness forbidden by Section 8, Art. IX, of the Constitution, if the aggregate of such bonds taken with the prior indebtedness of the borough amounts to more than seven per cent. of the taxable property of the municipality.

Argued April 30, 1912.   Appeal, No. 123, Jan. T., 1912, by defendant, from decree of C. P. Warren Co., March T., 1912, No. 5, on bill in equity in case of Daniel E. Lesser v. Warren Borough.   Before BROWN, POTTER, ELKIN, STEWART and MOSCHZISKER, JJ.   Affirmed.

Bill in equity to restrain an issue of borough bonds.

PRATHER, P. J., specially presiding, found the facts to be as follows:

1. The defendant, the borough of Warren, was chartered under the Act of April 3, 1832, P. L. 259, and is

now organized under and subject to the General Borough Act of April 3, 1851, P. L. 320.

2. That the Warren Water Company is a corporation organized under the Corporation Act of April 29, 1874, P. L. 73, and from the year 1881 has been, and is now furnishing water to the citizens of defendant borough.

The plaintiff, Daniel E. Lesser, is a citizen and taxpayer of the borough of Warren.

4. That under date of Feb. 8, 1903, by a contract in writing it was agreed by and between the said borough and the said water company, that the value of said water plant should be fixed by appraisers chosen as therein provided.

5. Pursuant to said agreemnt, and for the purpose of determining the value of said water plant, to the end that it might own, possess and operate said plant, the defendant borough caused an appraisement of said water plant and system to be made, and filed the same in the Court of Common Pleas of Warren county.

6. The valuation of said 'water plant or system, as so determined, is $390,000, at which price the water company proposes to sell and the defendant borough proposes to buy, issuing bonds to said water company in payment therefor, according to the provisions of the Act of May 31, 1907, P. L. 355, and its supplement, the Act of April 22, 1909, P. L. 135.

7. The value of the taxable property in said borough at the last assessment was $4,692,545.00. The constitutional limit of indebtedness upon the consent of its qualified electors at a public election is, therefore, $328,-478; and the present indebtedness of said borough is $190,000.

8. The bonds proposed to be issued are to be paid solely out of the receipts and revenues derived or to be derived from said water works or system, and the said borough, by an ordinance duly adopted, and approved by its burgess and council, has made full and ample pro-

vision for the creation of a sinking fund out of the said receipts and revenues for the payment of the interest and principal of said bonds as they respectively shall mature.

9. Section 4 of said ordinance reads: "Section 4. That to provide an adequate sinking fund from the rceipts and revenues derived from said water works or system for the payment of the interest on said bonds and for their redemption there shall be set aside annually from said receipts and revenues the sum of thirty-two thousand five hundred ($32,500) dollars until and including the year 1921, and the sum of twenty-six thousand ($26,-000) dollars until and including the year 1931, and the sum of nineteen thousand five hundred ($19,500) dollars until and including the year 1941, during the existence of the bonds herein authorized and directed to be issued to provide for the payment of the interest and liquidation of the principal thereof. And the moneys arising from said receipts and revenues shall be applied at the periods stated in said bonds herein authorized and directed to be issued and to their redemption at par according to their terms and not otherwise."

The court entered a decree enjoining the issue of the bonds.

*Error assigned* was decree awarding the injunction.

*D. I. Ball*, with him *Wm. Schnur*, for appellant.—If the borough can issue bonds containing within themselves a strict contract of non-liability on the part of the borough, then the indebtedness of the borough will not be increased by these bonds, and the plaintiff will not be injured by their issue, and his fancied cause of complaint in this case fails: Hoeveler v. Mugele, 66 Pa. 348; Montgomery v. St. Stephen's Church, 4 W. & S. 542; Addystone Pipe & Steel Co. v. Corry, 197 Pa. 41; Barr v. Philadelphia, 191 Pa. 438; Reuting v. Titusville,

175 Pa. 512; Wade v. Oakmont Borough, 165 Pa. 479; Erie's App., 91 Pa. 398.

There appears to be a wide divergence in the decisions of the different states upon various phases of the question of increase of municipal indebtedness. So far as we have access to them, the following authorities support our contention: Kelly v. Minneapolis, 30 L. R. A. 281; Quill v. Indianapolis, 7 L. R. A. 681; Swanson v. Ottumwa, 59 L. R. A. 620.

*T. L. Hampson,* for appellee.—The Act of Assembly in question attempts to create a class of obligations outside of the meaning of Section 8 of Article IX; and by so doing would narrow and restrict the ordinary meaning of the word "debt" as used therein. Such action is a palpable attempt to evade by narrowing the construction of said section of the Constitution. This the legislature cannot do: Keller v. Scranton, 200 Pa. 130; Buchanan v. Litchfield, 102 U. S. 278; Doon Township v. Cummins, 142 U. S. 366; Dixon County v. Field, 111 U. S. 83.

Any equity, either present or future, which the borough may acquire in the water works plant and system by the transaction, is hypothecated for the payment of the debt, and is liable to become forfeited upon default in payment: Joliet v. Alexander, 194 Ill. 457 (62 N. E. Repr. 861); Browne v. Boston, 179 Mass. 321 (60 N. E. Repr. 934; Eddy Valve Company v. Town of Crown Point, 166 Ind. 613 (76 N. E. Repr. 536); Brown v. Corry, 175 Pa. 528; Newell v. People, 7 N. Y. 9; Baltimore v. Gill, 31 Md. 375; Erie's App., 91 Pa. 398; McKinnin v. Mertz, 225 Pa. 85.

The case of Brown v. Corry, 175 Pa. 528, rules this case.

*Frank P. Cummings* and *Max L. Mitchell* filed an intervening brief for the city of Williamsport.

OPINION BY MR. JUSTICE BROWN, October 14, 1912:

The Borough of Warren, incorporated by Act of April 3, 1832, P. L. 259, became subject to the General Borough Act of 1851 on March 10, 1854. The Warren Water Company, incorporated under the General Corporation Act of April 29, 1874, P. L. 73, has been furnishing water to the inhabitants of the Borough of Warren from the year 1881. On February 8, 1903, the borough and the water company entered into a written agreement for the appointment of appraisers to appraise the works, rights, franchises and property of the water company, and the appraisement so to be made was to be regarded as the value of the plant. In pursuance of said agreement appraisers were chosen and an appraisement was made, which was subsequently filed in the court below in a proceeding instituted by the borough to acquire the ownership of the plant or system of the water company. The valuation of the water plant or system, as determined by the appraisers, was $390,000, at which price the company proposed to sell and the borough to buy, the latter to issue bonds to the water company in payment for its property, in accordance with the provisions of the Act of May 31, 1907, P. L. 355, as amended by the Act of April 22, 1909, P. L. 135. The value of the taxable property in the borough at the last assessment was $4,692,545. The constitutional limit of its indebtedness is $328,478. The present indebtedness of the borough is $190,000. The bonds which it proposes to issue are to be paid solely out of the receipts and revenues to be derived from the said water works or system, "without other liability whatsoever" on the part of the said borough. The court below found that, by an ordinance duly adopted, it has made full and ample provision for the creation of a sinking fund out of the said receipts and revenues for the payment of the principal and interest of the bonds as they respectively shall mature.

If the borough be permitted to purchase the plant of the water company, the bonds which it proposes to issue will be $251,522 in excess of the indebtedness which the Constitution permits it to incur. It insists that it may issue these bonds under the Act of 1907, as amended by the Act of April 22, 1909, P. L. 135, which provides for the purchase by municipalities of the water works of corporations, firms or individuals. The provision of the amended act which the borough invokes is the following section: "Section 5. For the purpose of said purchase the municipality may issue bonds, which shall be secured solely by such water works, systems, and property, and the revenues thereof, and without other liability whatever of said municipality thereon, to an amount not exceeding the appraisement of the value fixed by said appraisers or the court. The proceeds of the sale of such bonds shall be used exclusively for the purpose of making payment for the property so acquired." To enjoin the proposed issue of the bonds by the borough, the appellee—a taxpayer—filed this bill, averring that their issue would be in violation of Section 8, Article IX, of the Constitution, which declares that the debt of any municipality, except as therein provided, "shall never exceed seven per centum upon the taxable property therein." The injunction prayed for was awarded on the ground that the borough would, if permitted to issue the bonds, increase its indebtedness beyond the limit fixed by the Constitution, and from the decree enjoining it we have this appeal.

When the Borough of Warren and the Warren Water Company entered into the agreement of February 8, 1903, the former could have become the owner of the works and property of the latter under clause 7 of the 34th Section of the Act of April 29, 1874, which provides that it shall be lawful, at any time after twenty years from the introduction of water into a borough in which the water company shall be located, to become the owner of the works and the property of the company by paying

therefor the net cost of erecting and maintaining the same, with interest thereon at the rate of ten per centum per annum, deducting from said interest all dividends theretofore declared. The proposed purchase of the water works is not based on a valuation ascertained under the provisions of the Act of 1874, or 1907, but upon the appraisement made in pursuance of the agreement of February 8, 1903. The Act of 1874 is not involved in this proceeding, and the only provision of the Act of 1907 to be considered, as amended by the Act of 1909, is the above quoted fifth section of the latter act. For the purpose of purchasing water works, it authorizes a borough to issue bonds, which shall be secured solely by such water works system and property and the revenues thereof, without other liability whatever of said municipality thereon. Whether this is valid legislation is not the question before us, for, assuming it to be such, it cannot avail the Borough of Warren if the bonds which it proposes to issue will represent a municipal "debt" within the meaning of Section 8, Article IX, of the Constitution. No legislation can confer upon a municipality authority to contract indebtedness which the State Constitution expressly declares it shall not incur: Buchanan v. Litchfield, 102 U. S. 278. The narrow question raised on this appeal is whether the indebtedness to be incurred by the Borough of Warren in the purchase of the water works, by issuing for the purchase of the same bonds which are to be secured solely by such water works without any further liability whatever on the part of the borough, will create a constitutionally-forbidden indebtedness. If by issuing the bonds the borough will incur such an indebtedness, they cannot be issued, and the decree of the court below must be affirmed.

Words used in the constitution are to be given their general and popular meaning, and "debt" and "indebtedness" in Section 8, Article IX, of the Constitution "are not used in any technical way, but in their proper

general meaning of all contractual obligation to pay in the future for considerations received in the present": Keller v. Scranton, 200 Pa. 130. The bonds which the borough would issue to enable it to pay for the property of the water company, amounting to $390,000, will constitute obligations to pay in the future for a consideration to be received in the present; but to this the borough makes answer that they will not represent forbidden indebtedness, because they are to be secured solely by the water works and the revenues thereof, without any other liability whatever on the part of the municipality. They will, however, be obligations of the borough to pay out of the revenues and the proceeds of a sale, if necessary, of the property which the borough wishes to purchase with them, or their proceeds, and, if they should not be paid, the borough will lose the purchased property. The situation is thus tersely and correctly stated by the learned judge of the court below: "This is buying the water works on credit, pledging the water works to pay the debt. It is the exact equivalent of the borough giving its mortgage upon the water system purchased, to the water company to secure the payment of the debt. A default in payment would subject the property to foreclosure proceedings, and the borough would lose the property, together with all improvements and extensions of the water works system." A municipal debt will be incurred for the payment of which certain municipal property will be pledged, and, if the debt should not be paid, that property will be sold to pay it. Certain assets of the borough may be taken from it to pay its indebtedness. It could not purchase the water works under an unconditional promise to pay $390,000 for them, for such promise, evidenced by bonds, would concededly be the incurring of indebtedness beyond the constitutional limit, and both reason and many authorities sustain the conclusion of the learned judge below that what the borough proposes to do is violative

of the letter and spirit of the constitutional restriction upon municipal indebtedness.

That the scheme by which the borough has undertaken to acquire the plant of the water company would, if carried out, result in the creation of municipal indebtedness in excess of the constitutional limit, is to be regarded as settled by what was decided in Brown v. City of Corry, 175 Pa. 528. In that case the municipality, whose indebtedness was in excess of the constitutional limit, entered into a contract to purchase water works, to be paid for by twenty annual installments out of "the current revenues of said city and not otherwise." The contract further provided that, if the said revenues should be insufficient to meet the payments, the interest of the city in the said works should revert to the vendor, or his assigns, and the contract should be terminated. It was contended on the part of the city that the contract did not constitute a debt within the meaning of the Constitution, because the liability of the city to pay was limited to its current annual revenues, and could not be enforced by action; but it was held that this created a debt, and was, therefore, a violation of the constitutional provision prohibiting the incurring of indebtedness beyond certain prescribed limits. In so holding we approved the following, inter alia, from the opinion of the court below: "It is a debt for the purchase money, and in principle analogous to the debt for purchase money for land, for which a mortgage has been given with no accompanying personal obligation, which is universally termed a 'mortgage debt.'" Courts of other jurisdictions have placed the same meaning upon "debt" or "indebtedness" prohibited by state constitutions. The Court of Appeals of New York, in Newell v. People, 7 N. Y. (3 Selden) 9, in passing upon the validity of an act of the legislature undertaking to make a loan for the state by pledging certain state revenues for its repayment, under a clause exempting the state from all liability to pay any deficiency that might arise

in the fund pledged for the repayment of the loan, held
that a state debt within the meaning of the Constitu-
tion would be created. In the Mayor and City Council
of Baltimore v. Gill, et al., 31 Md. 375, the City of Balti-
more undertook to make a loan by hypothecating a num-
ber of shares of the capital stock of the Baltimore and
Ohio Railroad Company which it owned. The ordinance
authorizing the loan provided that the parties lending
the money should look for its repayment exclusively to
the stock pledged and that in no event should the city be
liable or responsible for the return or repayment of any
part of the loan, even though the stock pledged should
prove insufficient for its repayment. It was held that
this was adopted for the purpose of avoiding the re-
striction imposed by the Constitution upon the borrow-
ing capacity of the city, and, in holding that it was alto-
gether ineffective for that purpose, it was said: "It has
been argued that no debt is created by the ordinance, be-
cause, by the second section, it is provided that the par-
ties loaning the money shall look for its repayment, ex-
clusively to the stock pledged, and that in no event is
the city to be liable or responsible for the return or re-
payment of any part thereof, even though the stock
pledged should prove insufficient. This provision was
doubtless adopted for the purpose of avoiding the re-
striction imposed by the Constitution. We think it alto-
gether ineffectual for that purpose. A debt is money
due upon a contract, without reference to the question
of the remedy for its collection. It is not essential to the
creation of a debt that the borrower should be liable
to be sued therefor. No suit can be maintained against
the State by one of its citizens, and yet debts are cre-
ated by the State which it is bound in good faith to pay.
If money be borrowed by the mayor and city council,
which, by the contract, is to be repaid, it is immaterial
to inquire whether the city is liable to be sued therefor,
or its payment be secured by the pledge or hypotheca-
tion of specific property held by the city. It would be

in our judgment, equally the creation of a debt, within the meaning of the Constitution in one case as in the other. The Constitution is not to have a narrow or technical construction; but must be understood and enforced, according to the plain and common sense meaning of its terms. The plain intent of this section is to restrain the municipal government of Baltimore from borrowing money, except for the purposes and in the manner prescribed, either upon the general credit of the city, or by a pledge of its revenues or assets; thereby creating a debt, and imposing additional burdens upon the citizens, which may directly or indirectly involve increased taxation. This is not a new question. By the 12th section of the Constitution of New York, the legislature was prohibited from creating a debt, except for the purposes, and in the manner specified and excepted in the Constitution. An act was passed which provided for borrowing a sum of money, and its repayment was secured by the hypothecation of certain state revenues, to be derived from the canals. The law contained a provision, similar to that in the ordinance before us, declaring that 'the State should in no event, be liable to make up any deficiency in the canal revenue, or to redeem the certificates from any other source than the canal revenues, as directed by the act.' In the case of Rodman v. Munson, in the Supreme Court, 13 Barbour 63, and in Newell v. People, in the Court of Appeals, 7 N. Y. (3 Selden) 9 to 139, the question was considered, whether the act was in violation of the provision of the Constitution, forbidding the creation of a debt? In both cases, it was ruled upon full argument, and, in our opinion, upon sound reason, that the act created a state debt within the meaning of the Constitution, notwithstanding the clause exempting the state from all liability to pay any deficiency that might arise in the fund pledged for its payment." In Browne v. Boston, 179 Mass. 321, the City of Boston desired to acquire certain land. The price asked for it was $226,000. The borrow-

ing capacity of the city under the statute limiting its indebtedness was but little over $24,000, and it had no money in its treasury available for the purchase of the land. It was arranged with the owners of it that they should mortgage it to third parties for $202,000, and the city should buy it, subject to the mortgages, for $24,-000. The city was not to be mentioned in the mortgages and the deeds to it were to contain the statement that it was not to be held liable in any way for the payment of the mortgages or the interest thereon. In a proceeding to enjoin the city from carrying out the transaction it was held that it was, in substance and effect, a purchase of the land by the city for the sum of $226,000, and it was enjoined from consummating the sale, because it would thus have incurred an indebtedness beyond its borrowing capacity. In so holding the court said: "It is true that no action could be maintained against the city for the balance of the purchase price and that in that sense the city would not be indebted for such balance. But the property when conveyed will be subject to the mortgages that have been placed upon it pursuant to the arrangement that has been made, and the city either will have to pay them or submit to have the property taken from it by foreclosure proceedings." Another authority to be cited in support of the decree of the court below is The Joliet City v. Alexander, 194 Ill. 457. The City of Joliet had a system of water works and adopted an ordinance to extend it by issuing bonds for that purpose, to be paid out of the water fund and to be secured by a mortgage upon the water works. The ordinance was in accordance with the statute of the state authorizing cities to build or extend water works. The city was indebted in excess of the constitutional limit of five per cent. of the value of its taxable property. It was held that the issue of the bonds, though to be paid out of a special fund, would create a debt of the city, and, being in excess of the indebtedness permitted by the Constitution, the issue was enjoined, the

court saying: "It is claimed that the certificates issued and secured upon property of the city under this act and the ordinance will not constitute a debt and that no indebtedness will be thereby incurred, because the holder of certificates cannot enforce their payment out of general funds of the city, and the only effect of the mortgage will be to insure that the .water works will earn the money to pay for the extension. It is true that no action can be maintained against the city on the certificates other than to compel it to appropriate the water fund to their payment and to make the city defendant in a foreclosure suit by which its property is taken and applied to such payment. But it is not essential that there should be a right of action on the certificates against the city in order to constitute a debt where its money or property can be taken in payment."

While some courts have sustained the contention of the appellant that the debt which it would create is not one forbidden within the meaning of the constitution, the weight of authorities, including our own, sustains the sounder rule that the letter and spirit of constitutional restriction upon municipal indebtedness are not to be evaded by any scheme or device such as the appellant would adopt. In determining whether any legislative or municipal act conflicts with the Constitution, its substance, and not its form, must always be the test. To sanction what the appellant proposes to do would permit municipalities burdened with debt almost up to the constitutional limit, to constantly overstep it, with results easily to be conjectured. Public improvements which could not be made in the face of the Constitution would be made in defiance of it. To permit a borough or city to borrow money under a contract that it shall not be liable for its repayment, but that the lender must look solely to pledged municipal property or assets, would, in effect, annul the constitutional restriction upon municipal improvidence and strike down a safe-

guard against municipal profligacy. The Constitution is not to be thus set at naught, and the decree of the court below is affirmed at appellant's cost.