# Duff et al., Appellants, *v.* Perry Township School District.

*School law—School taxes—Power of school districts—Maximum tax—Fixing millage—Acts of May 18, 1911, P. L. 309, and April 28, 1921, P. L. 328.*

1. School districts are but the agencies of the state to accomplish the educational purposes ordained by the legislature, and they act in that capacity with respect to the levy of "school taxes."

2. Fixing a millage by a school district within the maximum prescribed by the school code is in the nature of a legislative act, the district acting as an agent of the State.

3. The tax is fixed by the Commonwealth, and the district may collect as much of it as it deems necessary.

4. As section 537 of the School Code of May 18, 1911, P. L. 309, permits a levy not to "exceed 25 mills on the dollar," this, standing alone, would seem to limit the levy, and to exceed it the agent must point to an enabling statute permitting the increase.

5. The Act of April 28, 1921, P. L. 328, changing the maximum, limited the purpose, for which money raised above the general millage could be used, to the payment only of the maximum salaries and increments of the teaching and supervisory staff.

6. When the Commonwealth appropriates money for a specific purpose, there is no authority or power in the receiving agent to use it for other purposes.

7. It was the purpose of paragraph 19 of the Act of April 28, 1921, P. L. 328, to relieve the taxpayers of the various districts from the payment of 35 per cent of the maximum salaries, which payment the act provided should be assumed by the State.

8. The school district cannot levy a tax to meet the entire minimum salaries, and after receiving the State's money paid on account of the minimum salaries, place it in the general fund to be used indiscriminately for any purpose the school districts may see fit.

9. Under the additonal millage, the school district is empowered to raise only the sum necessary to pay 65 per cent of the minimum salaries.

10. Before making the levy to pay minimum salaries, it is not necessary to exhaust the original authority of 25 mills for current expenses.

11. If the salaries are larger than the minimum fixed by the State, the difference must come from the 25-mill levy under section 537 of the code.

12. Paragraph 24 of the Act of 1921, gives no right to levy at all times the full amount of the minimum salaries without regard to other provisions.

*School law—School districts—Increase of debt—Improvements—Ordinary expenses—Discretion of board.*

13. Whether or not an improvement is an ordinary expense of a school district or one of such permanent nature that it should be financed by a long term obligation of the district, is to a large extent a matter of discretion with the school board, and not of the courts.

Argued May 13, 1924. Appeal, No. 208, Jan. T., 1924, by plaintiffs, from decree of C. P. Fayette Co., No. 1129, in Equity, dismissing bill in equity, in case of George M. Duff et al. v. School District of Perry Township et al. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ. Affirmed.

Bill to restrain tax levy. Before VAN SWEARINGEN, P. J.

The opinion of the Supreme Court states the facts.

Bill dismissed.   Plaintiffs appealed.

*Error assigned* was, inter alia, decree, quoting it.

*H. S. Dumbauld,* with him *Jesse K. Spurgeon,* for appellants.—The tax levy of seventeen mills "for teachers' salaries" was illegal.

The contract for building, furnishing and equipment constitutes an increase of the indebtedness of the district within the meaning of article IX, section 8, Constitution of Pennsylvania: Brown v. Corry City, 175 Pa. 528.

*H. E. Hackney,* of *Shelby, Henderson & Hackney,* with him *Brownfield & McDaniel,* for appellees.—Under the pleadings and the facts proved in this case, the lower court was right in refusing to enjoin the collection of the seventeen mill tax: Com. v. Com'rs, 40 Pa. 348; Millvale Boro., 162 Pa. 374.

The contract between the school district and the Brownsville Construction Company does not constitute an increase of indebtedness beyond the constitutional limitation: Keller v. Scranton, 200 Pa. 130; Addystone Pipe & Steel Co. v. Corry, 197 Pa. 41.

OPINION BY MR. JUSTICE KEPHART, July 8, 1924:

Perry Township is a school district of the third class. Its directors levied a tax of 25 mills, based on the annual budget, and an additional 17 mills to pay teachers' salaries.  A taxpayer's bill was filed to enjoin the collection of the latter tax, asserting its illegality.  The court below refused to issue the restraining order, hence this appeal.

School districts are but agencies of the state to accomplish the educational purposes ordained by the legislature, and they act in that capacity with respect to the levy of "school taxes."  Fixing a millage within the maximum is in the nature of a legislative act, the Commonwealth speaking through its selected agents: Min-

singer v. Rau, 236 Pa. 327. The Commonwealth has fixed the tax, leaving to the agents the duty of collecting so much of it as they deem necessary. Section 537 of the School Code permits a levy not to "exceed 25 mills on the dollar." Standing alone, this would seem to limit the levy. To exceed it the agent must point to an enabling statute permitting the increase.

The Act of April 28, 1921, P. L. 328, changed this maximum for a given purpose only; this was brought about because of the amendment to the School Code of 1917, P. L. 1235, 1919, P. L. 910, making increases in teachers' salaries and fixing minimum salaries. The Act of 1921, section 1210, paragraph 24, reads, ".....School directors of school districts of the.....third class..... are hereby authorized and directed to levy annually a tax on each dollar of the total assessment......to pay the minimum salaries and increments of the teaching and supervisory staff provided for herein. Said tax shall not be......affected by reason of the fact that it may increase the total annual school tax levy of any school district beyond the millage fixed or limited by law."

It is apparent this latter act specifically limits the purposes for which money raised above the general millage can be used. It must be applied to the payment of minimum salaries and increments of the teaching and supervisory staff. This is not disputed; the substantial difference between the parties is, What part of the sum necessary for this purpose may be procured through this tax from taxables of the district? It is appellee's contention that the full amount necessary to pay the salaries should be included, while appellant takes the position it should be that amount less thirty-five per cent paid by the State, and 17 mills raises a sum in excess of that required.

The confusion, if any, is based on paragraph 19 of the Act of April 28, 1921, P. L. 328, as amended. This act requires the Commonwealth to pay to third-class school districts for each member of the teaching and super-

visory staff 35% of the annual minimum salaries prescribed for the elementary teachers of such districts. The legislation was no doubt adopted in response to the insistent demand from school districts that the burden imposed by minimum salaries was too heavy for them to bear. There is not the slightest doubt the legislature intended to relieve the taxpayers of a part of this additional cost. Section 19 provides, "Of the salaries herein provided for teachers, supervisors, principals and all other members of the teaching and supervisory staff in the public schools,......the Commonwealth shall pay ......to such school [districts]......for each of said persons employed therein, as shown by the certificate ......filed with the Superintendent of Public Instruction in the November......preceding......as follows:...... In school districts of the second and third class for each member of the teaching and supervisory staff thirty-five per centum (35%) of the annual minimum salary prescribed herein for elementary teachers."

When the Commonwealth appropriates money for a specific purpose, there is no authority or power in the receiving agent to use it for other purposes. Paragraphs 21, 22 and 23 provide the time and manner in which payment should be made. This act is effective "during the two fiscal years beginning June 1, 1923, ending May 31, 1925, and each biennium thereafter." The basis of payment under the act for the first year is fixed by the certificate filed with the superintendent in the preceding November. While the initial payment may not be governed by the minimum salaries actually paid and provided in the act, the legislature has adopted what to it was the most available procedure and time for the act to begin. This does not in the least destroy the act's effectiveness. If the initial payment does not meet in full the 35% of the minimum salaries to be paid by the state, it may be made up under the general provision for taxation. The state is required to pay during specified months of each year.

Whatever difficulty there may be in ascertaining the amount to be paid by the state under paragraph 19 of section 1210, or whatever the delay may be in its receipt, it is certain the legislature intended to relieve the taxpayers of the various districts from the payment of 35% of the minimum salaries, etc., as provided in the statute. If this is to be done, the school district cannot levy a tax to meet the entire minimum salaries, and, after receiving the State's money paid on account of minimum salaries, place it in the general fund to be used indiscriminately for any purpose the school directors may see fit. If directors may compel taxables to pay the 35% in addition to the 65% they are required to pay, the purpose of the legislature will be wholly thwarted. This we should not permit.

Under the additional millage, the school districts are empowered to raise only the sum necessary to pay 65% of the minimum salaries. Temporary financing may be necessary the first year, but, considering the act as a whole, having the legislative intent in mind, the conclusion here stated seems inevitable.

Before making the levy to pay minimum salaries it is not necessary to exhaust the original authority of 25 mills for current expenses. If, however, the salaries are larger than the minimum fixed by the State, the difference must come from the 25-mill levy under section 537.

The contention of the appellee that paragraph 24 gives the right to levy at all times the full amount of the minimum salary without regard to later provisions, is untenable.

The difficulty with this case is, the court below has made no finding as to minimum salaries, and no assignment of error adequately presents the question. There is a finding that the school directors, in the exercise of their discretion, levied a 17-mill tax to pay the estimated minimum salaries and increments of the teaching and supervisory force of the school district. There is nothing in this record to show that this in any way

contravenes the statutory direction, and it is found as a fact that $66,000 was necessary to meet the expenses of instruction.

It is urged the contract for building, furnishing and equipping constitutes an increase of the indebtedness of the district within the meaning of article IX, section 8, Constitution of Pennsylvania. The court below found the cost to be $50,897, and that the contract price, together with the heating and plumbing contracts, was within the current revenues of the school district for the school year 1923-1924, concluding that they were ordinary expenses.

Without entering into an extended discussion of this matter, whether or not an improvement is an ordinary expense or one of such permanent nature that it should be financed by a long term obligation of the district, is to a large extent a matter of discretion with the school board. The court based its finding on section 601 of the school code, which makes it the duty of the board to provide necessary grounds and suitable buildings to accommodate the children.

To charge courts with the responsibility of deciding these administrative matters leaves the board without the statutory discretion to act as executive officers. They are the persons in official life designated by the legislature to act, and they are in a much better position to determine the matter than the judiciary.

The purpose of the constitutional provision now relied on is stated by Mr. Justice MITCHELL in Keller v. Scranton, 200 Pa. 130, 135. It "is intended as a restraint on this spendthrift tendency, to curb the extravagance of municipal expenditure on credit, to prevent municipalities from loading the future with obligations to pay for things the present desires but cannot justly afford, and in short to establish the principle that beyond the defined limits they must pay as they go. No limit is fixed to expenditure for which present means of payment are provided."

Decree affirmed at cost of appellants.