## Kinney v. Langhorne Borough School District et al.

*Mark Thatcher*, for plaintiff; *Vanartsdalen & Biester*, for defendants.

BOYER, J., September 16, 1932.—This matter comes up upon preliminary objections to the bill in equity in lieu of demurrer under the equity rules. The suit is brought by a resident taxpayer of the Borough of Langhorne against the School District of the Borough of Langhorne and the School District of the Township of Middletown and the board of directors of each district to restrain the defendants from amending an agreement under which they operate a joint consolidated school so as to provide that the School District of the Borough of Langhorne shall contribute an additional sum of money for the enlarging of the school building and to enjoin them from expending said amount under such amended agreement.

In 1926 the two defendant school districts entered into an agreement for the operation of a joint consolidated school, which agreement was amended in 1930. Under the terms of this agreement as amended the School District of Langhorne Borough contributed $15,092 in excess of the amount contributed by the Middletown Township School District and agreed that Middletown Township should make all future capital outlay until the expenditures of the two districts should be equal. In 1932 each district adopted a resolution setting forth that, inasmuch as Middletown Township was unable to borrow further sums of money without exceeding 2 percent of its assessed valuation and therefore without a vote of its electors, the said agreement should be amended so as to provide that the Borough of Langhorne should advance and expend the further sum of $7,500 for the purpose of altering and enlarging said building. This suit was brought to restrain the districts from consummating such agreement and making payment on the ground that it amounted to the School District of Middletown Township borrowing the said sum of $7,500 in excess of its borrowing capacity without a vote of the electors. To the bill setting forth these facts the defendant school districts filed preliminary objections amounting in substance to a demurrer.

The defendants take the position that the advancing of the additional sum of $7,500 is not the creation of an indebtedness within the meaning of the constitutional prohibition; that the liability of Middletown Township School District is merely contingent upon the dissolution of the relationship between the two districts which may never occur, and that therefore pending such dissolution there is no liability on the part of the Middletown district and no obligation to make any payment which could be enforced by suit. We cannot agree with this contention. While there may be some question as to whether either district alone could at its option terminate this relationship, counsel for both sides as well as the court have assumed that the agreement could be terminated by either party at will. This clearly is the intention of the agreement as expressed in section 9, as follows: "It is further agreed that in event of either school district wishing to discontinue this joint consolidated school, such dissolution shall be in accordance with provisions in article XVIII, section 1808, of the School Code of Pennsylvania." There is nothing in the entire agreement to throw any doubt upon the meaning of that section. We find nothing in the School Code of May 18, 1911, P. L. 309, to prohibit the incorporation of such a provision in the contract. Section 1808 of the School Code is, in itself, rather ambiguous as to whether such joint school may be discontinued by either district or whether the consent of both is required. The provision is as follows: "The several school districts establishing any joint school or department may, at any time by a majority vote of the school directors of their respective districts, discontinue any such joint school or department . . ." While that clause may contemplate the consent of both districts to a discontinuance, it certainly does not specifically prohibit a provision in the original agreement that the relationship may be terminated at the option of either district.

If the relationship is terminable at the will of the creditor district, then the advancing of this additional sum by the Langhorne district to the Middletown district upon the agreement that upon dissolution each district shall receive what it originally contributed amounts in substance to a demand loan enforceable at the option of the creditor district by termination of the relationship and suit, and as such would be an increase of indebtedness within the meaning of section 8 of article IX of the Constitution.

Even if the relationship is not terminable at the election of the creditor district, there is always the possibility that new boards may be elected who are not favorable to the consolidated school and who may by joint action terminate the relationship, whereupon the amount proposed to be advanced would immediately become due and payable. If this were held not to create an indebtedness, it would afford an opportunity to circumvent the constitutional prohibition even beyond the 7 percent limit. A district already in debt to the constitutional limit might induce an adjoining district not so indebted to advance funds and erect expensive school buildings as a consolidated school in the poorer district with a tacit understanding that after the money had been advanced and the buildings erected the relationship would be terminated, leaving the district having the school in debt far beyond the constitutional limit. A construction of the provisions of the School Code which would make possible such a scheme must be avoided. The courts of Pennsylvania have frowned upon all "schemes" and "devices" which have the effect of defeating the constitutional limitations upon indebtedness of municipalities: Lesser v. Warren Borough, 237 Pa. 501, at page 513.

There is a further provision by which this proposed agreement would create a liability amounting to indebtedness, namely, the agreement that all further outlays of principal shall be paid by the Middletown district until its contribu-

tion shall equal that of the Langhorne district. While such outlay of principal is indefinite both as to time and amount, in our opinion it amounts to a definite contractual obligation to repay the difference by capital outlay and thereby increases the indebtedness of the Middletown district. If this amendment can be sustained under the circumstances, then there would be nothing to prevent the repetition of such amendments indefinitely in the future until the Middletown district were burdened with a debt which would amount to bankruptcy.

Our courts have frequently defined "debt" and "indebtedness" as used in this section of the Constitution. In Keller v. Scranton, 200 Pa. 130, 134, the Supreme Court, by Mr. Justice Mitchell, said:

"The constitution is to be understood, prima facie at least, as using words in their general and popular sense, unless they are clearly technical in their nature. While the word 'debt' has a technical use of somewhat more limited signification than its common meaning, yet it is not naturally or usually a technical word. And it is to be noted that the constitution uses in immediate and synonymous connection, the word 'indebtedness' which is of wider and even less technical significance. On this point the purpose and intent of the constitutional provision are conclusive."

And at page 135 it was said: "Debt and indebtedness in the section in question are not used in any technical way, but in their broad general meaning of all contractual obligation to pay in the future for considerations received in the present."

In Lesser v. Warren Borough, 237 Pa. 501, 510, the court defined "debt" as used in the Constitution as follows: "A debt is money due upon a contract, without reference to the question of the remedy for its collection. It is not essential to the creation of a debt that the borrower should be liable to be sued therefor", the court adding that: "The Constitution is not to have a narrow or technical construction; but must be understood and enforced, according to the plain and common sense meaning of its terms." See, also, Busser et al. v. Snyder et al., 282 Pa. 440.

In Keller v. Scranton, supra, the court, in discussing the necessity for this broad interpretation of the constitutional provision limiting municipal indebtedness, said (pp. 134, 135):

"It is part of the open history of the times that many municipalities in haste to get the advantages enjoyed by older and wealthier communities entered recklessly into all kinds of projects under the name of public improvements, and in a few years found themselves like heirs to an estate burdened with post obits at ruinous rates, on or beyond the verge of bankruptcy. . . . The constitutional provision is intended as a restraint on this spendthrift tendency, to curb the extravagance of municipal expenditure on credit, to prevent municipalities from loading the future with obligations to pay for things the present desires but cannot justly afford, and in short to establish the principle that beyond the defined limits they must pay as they go."

It is with some reluctance that we conclude that the proposed amendment of the agreement between these school districts whereby the Langhorne district would increase the balance due it from the Middletown district would be an increase of indebtedness of the latter district beyond the legal limit prescribed by the Constitution. We are satisfied that both boards are acting in the utmost good faith and for the best interests of their schools. However, we cannot ignore the positive bar of the constitutional prohibition and must grant the prayer of the bill. In passing upon the constitutionality of the proposed action the court cannot take into consideration that it may be highly beneficial and for the well-being of the district: Busser et al. v. Snyder et al., 282 Pa. 440.

516

Now, September 16, 1932, this matter having come up upon bill and answer and the bill being taken pro confesso, it is, therefore, adjudged and decreed:

1. That the defendants be and hereby are enjoined and restrained from executing an agreement altering and amending the existing agreement under which the joint consolidated school is operated by the joint school boards of the School District of the Borough of Langhorne and the School District of the Township of Middletown as authorized and proposed by the said joint and several resolutions of the school boards of said districts, adopted on May 19, 1932.

2. That the excess of capital outlay made by the School District of Langhorne Borough over that of the School District of Middletown Township is to be regarded as an indebtedness of the said School District of Middletown Township, and any and all further proposed payments or contribution by said School District of Langhorne Borough toward said capital outlay is hereby enjoined and restrained insofar as the same would increase the indebtedness of Middletown Township to an amount in excess of 2 percent of its assessed value, until the consent of the electors of said School District of Middletown Township is regularly obtained to such increase.

3. That the defendants pay the costs of these proceedings.