## In re Foster Township School District

*George I. Puhak* and *Clarence Balentine,* for petitioners.

*M. S. DePierro,* for respondents.

COUGHLIN, J., October 17, 1934.—This is a proceeding brought by petition of 10 resident taxpayers of the School District of the Township of Foster, Luzerne County, Pennsylvania, asking to remove from office, as school directors, respondents, Philip Guza, John Fedorchak, Peter Ferko, Steven Kardisko, John Boder, John Bra-

dish, George Sotak, all of whom have been members of said school board since the first Monday of December 1929 (they having been elected prior thereto), except said Boder and said Fedorchak, who became members the first Monday of December 1931.

The petition is presented under section 217 of the School Code of May 18, 1911, P. L. 309, providing for removal for failure or neglect to perform mandatory duties therein prescribed. The district is a district of the third class.

"The proceedings for the removal of school directors are penal in character, and the rights of the directors must be as carefully considered as are the rights of a defendant in a criminal court": Scranton City School Directors, 6 D. & C. 105.

"The remedy provided by section 217 of the Act of May 18, 1911, P. L. 309, for the removal of school directors is highly penal in character and must be strictly construed": Pittston City School District's Directors, 6 D. & C. 545.

We take up, therefore, the mandatory duties set forth as having been violated in the petition of those seeking to oust.

One of the duties alleged to have been neglected is that prescribed by section 563 of said code. It provides that the board shall prepare a budget of the amount of funds required by the district in its several departments for the following fiscal year. This is to be done at or before the time of levying the annual school tax. The budget is to be apportioned to the several classes of expenditures by the board. Thereafter no money apportioned for any class of expenditures is to be used for any other purpose than designated in said budget until preceded by affirmative action upon the part of the board at a legal meeting thereof. The total amount of the budget must not exceed the amount of the funds available for

school purposes in said district, including the proposed annual tax levy and State appropriation.

A second duty allegedly violated comes under section 226 of said code, prohibiting a director from being employed in any capacity by said district, or receiving any pay for services rendered the district, except as provided by the code.

A third duty allegedly not performed comes under section 553 of said code, requiring the school tax collector to make a written report to the secretary of the board at the end of every month of the amount of taxes collected during the month, furnishing the names of taxables from whom collected. The tax collector, under said section, must at the end of each month pay over the amount collected to the school treasurer of the district, obtain his receipt, and exhibit it to and have it countersigned by the secretary at the time of making his monthly report.

It is charged against respondents that for the fiscal year 1930-31 the said respondent board expended $32,-430.32 in excess of their budget. The facts are these: The board fixed their budget as required by law for said year at $146,240, and made their tax levy. They expended $145,476.06. Of this there seems to be no dispute. The under-expenditure was $763.94. This budget was based on a valuation of $2,318,475, and a tax levy of 57 mills. This was the 25 mills allowable for general purposes and an additional 32 mills alleged to be for the teachers' salaries.

In December of 1930, Judge Valentine, of our court of common pleas, granted a preliminary injunction restraining the tax levy beyond 43 mills, and the valuation upon which the tax levy had been made on coal lands was cut, by order of Judge Jones, in accordance with the coal decision rendered on or about that time.

Other proceedings to cut the tax levy had been instituted in October 1930, but had been dismissed.

The proceedings in December to reduce the tax levy, accompanied by preliminary injunction, were finally continued to March 1931. The income was therefore cut at about the close of the fiscal year some $32,457.25, with a falling off in the tax collector's accounts. There was also a shortage in the tax collector's accounts, although the same was not discovered until 1933, amounting at that time, according to the auditors of the petitioners, to $25,000. These items, as near as we can cull the same from the testimony, resulted in a deficit, and caused a floating indebtedness of about $70,000, July 1, 1933.

At the beginning of the fiscal year 1930-31 the indebtedness of the school district was

Outstanding orders.............. $1,398.75
Temporary loans................ 24,000.00
Bonded indebtedness............. 28,000.00

The temporary loans were provided for in the budget of May 26, 1930, but were not paid, as a result, it is argued, of the restraining order made permanent in March 1931, at which time the millage was reduced by court order 14 mills. There were also land returns, which for the years 1930-31, 1931-32, 1932-33, totaled $24,275.18. Tax defalcations of over $25,000, discovered in the fiscal year, 1932-33, which will be hereinafter referred to, further upset the fiscal affairs of this district, and resulted in a large floating indebtedness at the end of the fiscal year 1932-33.

In the fiscal years 1931-32 and 1932-33 the levy remained at 43 mills.

The reason for reducing the levy from 57 mills to 43 mills is set forth in the opinion of Judge Valentine in Coxe Brothers & Co., Inc., et al. v. School District Foster Twp., 26 Luz. L. R. 201. The reason is as follows:

In districts of the third class the levy for general purposes is restricted to 25 mills. For the payment of minimum salaries and increments there is no limit, but the

amount raised for the payment of such salaries and increments cannot exceed the sum remaining after credit is given for the payments to be made by the Commonwealth, and while the sum to be paid by the Commonwealth may not be paid to the district during the fiscal year for which levy is made, any such sum is an offset of the district (citing Duff et al. v. Perry Township School Dist., 281 Pa. 87, 92), and must be taken into consideration in determining the amount to be raised by levy for such purposes.

In other words, as was stated in Duff et al. v. Perry Township School Dist., supra, under the additional millage the school district is empowered to raise only the sum necessary to pay 65 percent of minimum salaries, or the percentage provided in section 1210 of the School Code, which under certain conditions enumerated in the statute may be reduced, dependent upon the valuation in the district per teacher, whereby the Commonwealth assumes in some cases the payment of 75 percent and in others 60 percent.

Now the complaint here is that the expenditure of 1930-31 exceeded the budget. It did not, however, exceed the budget that was fixed in May, preceding the beginning of that fiscal year, provided the 57-mill levy proposed could have been made under the law. Nor is complaint made as to the borrowing limitations of the district. The complaint is that the budget exceeded the budget that might have been made to equal the tax levy as it was subsequently reduced by the court at almost the end of the fiscal year. The issue is clearly to hold this board liable to the extent of removal thereof for expenditure in excess of the budget that can only be figured out as predicated upon court action after the expenditures have been made at almost the close of the fiscal year. This might be said to be based on the question whether the proposed levy of 57 mills was a legal levy.

There is another fact that complicates the financial

situation of the district at the close of the fiscal year 1932-33. Subsequent to the placing of the duplicate in the hands of the tax collector, the coal companies refused to pay upon a valuation in excess of 55 percent. Reduction was subsequently allowed by law on assessments in the amount of 35 percent, and the additional 10 percent was paid the following year, but not the 35 percent. It was not until October 1931 that the order fixing the reduction at 35 percent was handed down by the court.

At the entry of the district into the fiscal year 1930-31, the school district was in debt to its teachers by reason of the fact that the coal companies refused to pay beyond said 55 percent. At its annual meeting of May 1930, the board thereupon added to its levy, upon being advised that they could do so under the law, enough millage to pay the current teachers' salaries and the unpaid salaries of the year before, making a total levy of 57 mills. But in Coxe Brothers & Co., Inc., et al. v. School District Foster Twp., 26 Luz. L. R. 201, the court, 10 months later, restrained the collection of over 43 mills. The court having cut the valuation 35 percent the district had a resultant shortage.

Thus it appears upon careful study of the testimony that the fiscal difficulties of this district admittedly arise out of three things: (1) The adjusted coal valuation; (2) the restraining order subsequently made in March 1931, restraining as illegal the additional levy over and above 25 mills, from 32 mills to 18 mills; (3) alleged embezzlement, at all events a shortage, by the tax collector, discovered in 1933, followed by insolvency upon the part of the bonding company guaranteeing the performance of his duties.

Violation of the budget law or mandatory provisions as they are set forth in section 563 of the code, by which we can summarily remove these directors, could not exist had the 57 mills been a legal levy. It is now alleged to be illegal, and has been so held insofar as it exceeds 43

mills. Budgeting is required by this section as a step preliminary to the tax levy. It is a logical procedure, and is a required one. It is limited by the statute to the amount of funds available, including State appropriation and the proposed tax levy. Limitations on the amount of these latter are fixed by law. Surely the proposed tax levy referred to in section 563 of the code means the tax levy proposed under the law, or in other words, a legal tax levy.

The budget is but an estimate, and public officials, to wit., the school directors, representing the people within the district are to estimate what they will spend annually on their educational system within statutory and constitutional limitations. The board has been held to have exceeded the statutory limitation in fixing the budget in May 1930, by 14 mills: Coxe Brothers & Co., Inc., et al. v. School District Foster Twp., 26 Luz. L. R. 201.

But the coal companies had withheld 45 percent of their taxes awaiting the tax decision. Minimum salaries as a result were in part unpaid. Section 1210 of the School Code set no limit of taxation for minimum salaries. This did not refer, however, to back salaries necessarily, and in the decision above referred to the millage was reduced to 43 mills.

The removal of directors is within the discretion of the court. Under these extraordinary circumstances and conditions thus created I would not remove them on the above grounds.

Has section 226 of the code been violated? This prohibits employment of, or receipts for services by school directors except as by the act provided. Section 303 permits school directors to be secretary and treasurer of the board in third class districts, such as this. Under section 323 the board fixes the salary for said services. Section 323 further provides that he shall perform such other duties pertaining to the business of the district as are required by this act, or as the board of school direc-

tors may direct. It appears plain that the duties of the secretary are such as are provided by the code or its amendments, or directed by the board. The secretary may receive a salary. It shall be fixed by the board.

In this case Philip Guza, one of the respondents, was elected secretary and his salary fixed at $435 per annum. He received an additional $135 for fixing the tax duplicate, upon which there were, according to the testimony, some four thousand items. The board might have required this work under the law, of the secretary, for his secretarial salary. They might have fixed his salary at $570 instead of $435, but this was not done. The $435 and the $135 were permitted to remain in separate items, which does not conform to the law, though no fraud or dishonesty appears to have been intended. The entire compensation should have been included in the salary, and reported in accordance with section 323. Both the public and the superintendent of public instruction are entitled under the law to this information. It will be by them received without equivocation if the law is complied with.

It is not contended that this amount is excessive, or that the method of doing it was a new one, or that it was secreted and withheld from observation. This might furnish a ground for removing the board, but it is not mandatory upon us so to do. This method should promptly be corrected by counsel advising the district.

It is further complained that section 553 has been violated. This section provides, inter alia, that every tax collector shall furnish a written report to the secretary of the board of directors monthly, and shall pay to the school treasurer of the district the amount collected each month. A receipt shall be presented with the monthly report by the tax collector showing the receipt of all moneys by the treasurer, which receipt the secretary shall countersign.

This unequivocally places a mandatory duty on the

tax collector, and certain mandatory duties upon the part of the secretary and treasurer. Certain of such receipts were produced in court, covering 1932 and 1933 up to the month of March. It was at this time that the financial committee discovered the tax collector's defalcations, and employed special counsel to pursue to a settlement.

The tax collector is an official elected by the people for a 4-year term. To the people from whom he receives his authority he is responsible. The duty to make reports, as provided by the aforesaid section, is a wise provision to insure prompt payment and reduce opportunities for default, or disclose default if existing. As to removal by the board itself, the removal provided for in section 547 exists only in case of, (a) no election of a collector, (b) a vacancy in the office, (c) failure to qualify for the office. Such is not here the case. The board had no authority to remove him.

What action should the board have taken? Directed the arrest of the collector, had they known of the defalcation? They did upon discovery place the matter in the hands of special counsel. Arrest should have followed. It has now taken place. Nowhere in the code are we able to find where a mandatory duty to arrest is placed upon the board. During these proceedings the tax collector had not been arrested. There seemed to be no desire upon the part of petitioners to pursue the tax collector who was in default, but rather to seek the removal of the directors for the violation of a mandatory duty placed upon them.

We find no authority, nor have we been furnished with it, whereby we have authority to impeach the directors for failure of another elected officer to do as the law directs him to do. On the contrary, see Removal of School Directors of City of Scranton, 25 Lack. Jur. 343. Though we might be of opinion that the board by more vigilance might have discovered the tax collector's shortcomings, we find nothing in the law authorizing the removal of

these elected officials of the district upon the ground of violating a mandatory duty placed on them, and specified in petitioners' complaint. The audit of 1933 shows a balance due from the tax collector as of July 1, 1933, in the amount of $39,051.59. Judgment was entered to no. 190, December term, for that amount, and execution followed. The tax collector settled his accounts apparently for the years prior to 1933. He paid the 1932 duplicate, however, with moneys collected from the Jeddo-Highland Coal Company in 1933. In 1933 the collector not reporting the 1933 taxes paid, or it appearing it was unpaid when it had, in fact, been paid to the collector, the defalcation appeared. The board thereupon acted.

At the end of the fiscal year 1932-33 temporary loans appear to be $19,000 by the audit appearing in the testimony. The amounts of the temporary loans are not complained of in this petition to remove. We are, therefore, not called upon to decide whether they exceed 1 percent, although $16,000 in addition to the $19,000 temporary loans had been received as an advancement on the State appropriation for the subsequent fiscal year. Whether or not that advancement was a loan, and hence causing a violation of section 508 is not before us for decision.

Therefore, we are constrained to conclude that we find no authority to remove respondents for violation of mandatory provisions of the code, in reference to defalcations of the tax collector, as requested by petitioners. We do find that the financial affairs of the district are in a condition, at the close of the 1932-33 fiscal year, necessitating an immediate application at that time of keen business management by the board and its counsel.

What has been done since the fiscal year of 1932-33 is not before us, nor have we knowledge thereof, but since that time the defalcations of the tax collector and the

problems resultant therefrom were squarely before the board.

The balancing of income with expenditures is a responsibility which the law places upon the board of directors, not upon the court. It can only be done by increasing the revenue, or decreasing the expenses. In so doing, the action of the board may be restrained when there is an abuse of its discretion, or a violation of the provisions of the law which limits its powers; and where mandatory provisions of the School Code are violated said directors may be removed.

If the board keeps within the limitations prescribed by law, the amount expended for education in the district is for their discretion. If through poor judgment, poor advice, poor business management, they abuse that discretion, then they may be restrained. The attack should logically be made upon the budget, and made promptly. When an attack is made for removal it must be upon some mandatory duty placed upon the directors, and by them violated. Therefore,

We deem, in accordance with the above, that the petition should be refused and the same dismissed. Costs to be paid by defendants after submission to the court.