Hallinger v. Zimmerman.

HIRAM G. HALLINGER

*v.*

WALTER ZIMMERMAN.

[Filed April 8th, 1902.]

A decree of specific performance required the grantor to deliver, and the grantee to accept, a deed for certain premises in Burlington, clear of all encumbrances up to September 1st, 1897. The original charter of Burlington provided that taxes should become a lien from the time when assessed. Pursuant to *Gen. Stat. p. 3407 § 560*, giving the common councils in cities power to fix by ordinance the time when taxes should be assessed and collected, &c., the common council of Burlington enacted that the city assessor should assess taxes between May 1st and the second Monday in July; that the taxes should become due and payable between December 1st and December 20th; that the common council, at a stated meeting in September, should fix and determine the rate of tax to be levied on each $100 and certify the rate to the assessor, who should thereafter extend the same, &c.—*Held*, that the taxes for 1897 could not become a lien upon the property until after the rate of taxation was fixed by the common council in September, and therefore did not have to be paid by the grantor in order to comply with the decree.

On order to show cause why the defendant should not be attached for contempt.

*Mr. George H. Peirce* and *Mr. Henry F. Stockwell* for the complainant.

*Mr. John F. Harned,* for the defendant.

REED, V. C.

The ground for this order is the alleged disobedience by the defendant of a decree in this court made in a suit for specific performance brought by Hallinger against Zimmerman. The decree directed that Hallinger should execute and deliver to Zimmerman a deed for premises in Burlington, New Jersey, clear of

all encumbrances up to the 1st day of September, 1897, and the said Zimmerman was to pay to Hallinger certain amounts of money mentioned in the decree. Hallinger tendered a deed for the premises which he was to convey in Burlington, and Zimmerman has refused to pay the several sums required to be paid by the decree.

The point raised by Zimmerman is that the property in Burlington which, by the decree, was to be conveyed clear from all encumbrances up to the 1st day of September, 1897, was at that date subject to a lien for taxes imposed for the year 1897, for which tax it was afterwards sold. The single question is at what date taxes become a lien upon real estate within the city of Burlington.

The original charter of the city of Burlington provided that all taxes levied upon real estate shall be and remain a lien thereon for the space of two years from and after the time when the same shall be assessed. That charter, in section 26, provided that the city assessor should assess taxes between the 20th day of March and the 20th day of May. In 1882, an act entitled "A further act concerning cities" (*Gen. Stat. p. 3407 § 560*), gave the common council in cities authority to fix by ordinance the times and dates when taxes should be assessed and collected, the date of the session of commissioners of appeal, the date on which the collector of taxes shall make return, and the names of delinquents. It provided that none of these dates should be later than the time fixed by the general law in respect to townships. On June 12th, 1895, the common council of the city of Burlington passed an ordinance providing as follows:

"The City Assessor shall assess taxes between May 1st, and the second Monday in July, annually; that the said tax shall become due and payable to, and the City Collector shall collect the same between the 1st day of December and the 20th day of December, annually; that the assessor shall, on the second Tuesday of July, place his duplicate in the hands of the City Clerk together with all claims for deductions filed with him; that the Clerk shall immediately refer the same to the Finance Committee of the Common Council, which shall at once proceed to examine the same, and, if necessary, revise and correct the same, after which the duplicate shall be returned to the Assessor."

The ordinance also provides that the common council shall, at the stated meeting in September, fix and determine the rate of percentage of tax to be levied on each $100 for that year, and certify such rate to the assessor, who shall thereupon forthwith proceed to apply the said rate or percentage to the said duplicate of assessments, and having applied the same by carrying out the totals required or arrived at by such computation, shall, within fifteen days of the meeting of the board of assessors, deliver the said duplicate to the city clerk, who shall deliver the same to the county collector.

It also provides that the commissioners of appeal shall meet on the fourth Tuesday of November.

Under these provisions, at what date can property be said to have been assessed?

If by assessment is meant merely the appraisement of the assessable value of the taxable property, then the assessment was made previous to the second Tuesday in July. If, however, by assessment is meant the imposition of a specific sum upon the property of each taxpayer, it could not have been made previous to September 1st, because the common council is directed to fix the rate of taxation at its stated meeting in September, and then the assessor is to thereafter apply this rate to his duplicate.

In *Kern* v. *Townsley, 45 Barb. 150,* in a contract to sell property the purchaser agreed to pay all taxes and assessments that shall be taxed or assessed on said premises from July 8th. Previous to this date one of the assessors had entered the property upon his assessment roll. The assessors of the town met in August to complete the assessment roll, and delivered it to the supervisor on September 1st. The court held that the tax was not assessed on July 8th, for until the assessments are completed so that the amount of tax can be ascertained or determined, no tax can be said to be assessed or taxed on premises.

In *Dowdney et al.* v. *Mayor, &c., of New York City, 54 N. Y. 186,* Chief-Justice Lott, in holding that a special assessment was not a lien until confirmed, remarked that no tax or assessment can exist until the amount thereof is ascertained or determined.

In *Barlow et al.* v. *St. Nicholas National Bank, 63 N. Y. 399,* the court held that the entry of land in the assessment roll does not constitute an encumbrance thereon. Mr. Justice Andrews remarked: "The assessment is the basis upon which the board of supervisors act in apportioning the taxes, but it is in no sense an imposition of a charge upon the land described in the roll."

In *Hohenstatt* v. *Bridgeton, 33 Vr. 169,* there was a construction of the language used in section 376 of the general statutes, page 3360. By the language in this section, the taxes in cities where there was no special charter provision, became a lien from and after the date of levy and assessment. Mr. Justice Garrison said the phrase "levy and assessment" in the tax legislation now before us, means the doing of whatever things are required to be done to authorize the collector to gather the taxes. A lien was there held to begin when the duplicate was completed and delivered to the collector.

I think that the meaning of the word "assessment," as employed in the charter of Bridgeton, is the same as the words, "levy and assessment" employed in the act under construction in the case just mentioned.

I am of the opinion that the taxes of 1897 were not a lien upon the property in question before September 1st, 1897.