## MAYOR AND ALDERMEN OF JERSEY CITY v. TOWNSHIP OF MONTVILLE.

Argued November Term, 1912—Decided January 16, 1913.

1. Property owned on May 20th, 1911, by the Jersey City Water
   Supply Company and subject to taxation, was assessed to that
   corporation; on October 10th, 1911, the property was conveyed
   to the mayor and aldermen of Jersey City, which claimed ex-
   emption because the taxes had not yet become a lien.   *Held*, that
   as the Tax act required property to be assessed as of May 20th,
   exemptions from taxation must also be as of that day, and that
   the claim of the city should not be allowed.
2. The statute provides that the lien for taxes shall be a first lien
   paramount to all prior or subsequent alienations and descents
   of the land.   *Held*, that the effect is to make taxes when properly
   assessed a lien paramount to a deed made between May 20th and
   December 20th.

On *certiorari.*

Before Justice SWAYZE.

For the prosecutor, *James J. Murphy.*

For the defendant, *Philip R. Van Duyne.*

The opinion of the court was delivered by

SWAYZE, J. On May 20th, 1911, the property subjected to the present tax belonged to the Jersey City Water Supply Company, and was assessed to them. On October 10th that company conveyed the property to the mayor and aldermen of Jersey City, and the city now claims exemption from the whole or a portion of the tax. I think this claim of the city cannot be allowed. The Tax act requires that property shall be taxed as of the 20th of May. In this respect it is like the act of 1866, under which it was held that the assessment must relate to that day, and that real estate could not be assessed in the name of one who became an owner subsequent to May 20th. *Shippen* v. *Hardin*, 5 *Vroom* 79. It follows almost necessarily that exemptions from taxation must be as of that day, and that land is not exempt because subsequently it passes to an owner who is exempt. We are not left, however, to this inference. Section 7 of the act (*Comp. Stat., p.* 5087) requires the assessor to enter on his list a description of real property exempt from taxation; section 22 required the county board of taxation not later than the third Tuesday in September to fill out a table of aggregates showing, among other things, the total valuation of property exempt from taxation, specifying among other items the amount of public property other than school property, and the total value of exempt property in each taxing district. By the act of 1906 (*Comp. Stat., p.* 5118, *pl.* 37s) the assessors were required to have their duplicates before the county board on the first Tuesday of August; the county board was required to perform the duties of county boards of equalization or other county boards charged with the review of the tax assessments, of tax lists and of the county board of assessors (*Comp. Stat., p.* 5119, *pl.* 37t) ; and to fix the rates per dollar "which shall be such as according to the valuation on the duplicate will be sufficient to produce the sum required." The act requires the duplicate thus prepared to be delivered to the collectors on or before October 1st. *Comp. Stat., p.* 5119, *pl.* 37w. The scheme obviously requires that the amount of the ratables and the rate of taxation shall be fixed before October 1st. This is impossible

if the amount of the ratables is subject to variation by reason of a change of ownership after October 1st, which shall render the property exempt from that tax levy. The fact that the property is exempt at some time before the tax is payable is not important. Under our statutory scheme, taxes are imposed not for a particular year, calendar or fiscal, but on a particular day. *State* v. *United New Jersey Railroad and Canal Co.*, 47 *Vroom* 72, 78. That day in the case of the general property tax is May 20th. On May 20th, 1911, the property in question was taxable to the Jersey City Water Supply Company, and there was no exemption.

The fact that the property passed to Jersey City before the tax became a lien does not prevent the collection of the tax. The statute expressly provides that the lien shall be a first lien paramount to all prior or subsequent alienations and descents of the land except subsequent taxes. The effect is to make the taxes, when properly assessed, a lien paramount to a deed made between the 20th day of May and the 20th day of December. Every one purchasing land must be held to know that it is liable to taxation, and certainly if he purchases after the 1st of October, and probably if he purchases after the 20th of May, that no notice will be given to him, and that the notice required by statute will be given to the owner as of the 20th of May. He must therefore be held to know that his right may be subjected to a lien without notice; the lien depends not upon any procedure as against him but upon the procedure against a former owner. He is in the position of one buying *pendente lite*. The provision that the owner may redeem (section 57), and that notice must be given in order to foreclose his right to redeem (section 59), indicates that unless he redeems, his rights will be cut out. This right of redemption was relied upon in *Paterson* v. *O'Neill*, 5 *Stew. Eq.* 386, to demonstrate that a tax lien would take precedence of a prior mortgage. It is well settled in this state that the legislature may make taxes a lien paramount to prior claims. *Morrow* v. *Dows*, 5 *Id.* 676; *Vreeland* v. *Jersey City*, 10 *Id.* 574. The last was a case of water rents, the principle of which was subsequently approved by the United States Su-

preme Court. *Provident Institution for Savings* v. *Jersey City,* 113 *U. S.* 506. Section 49 of the present Tax act making taxes a paramount lien, is adopted from section 1, of the original act of 1879 (*Pamph. L., p.* 340), which was evidently meant to extend throughout the state the rule that prior thereto had been made applicable to cities by their special charters. The proceedings in this case are therefore affirmed.