**THOMPSON et al. v. UNITED STATES.**

(District Court, D. Minnesota, Third Division. July 31, 1925.)

No. 1420.

1. **Internal revenue ⬅➔38—Natural presumption is that taxpayer will not overvalue estate for purpose of taxation.**

Natural presumption is that taxpayer will not overvalue estate for purpose of taxation.

2. **Internal revenue ⬅➔25—Court held not justified in disturbing valuation of realty for taxation purposes, as voluntarily returned by taxpayer.**

Court *held* not justified in disturbing valuation of realty for taxation purposes, as voluntarily returned by taxpayer; it appearing the valuation was based on opinions of most competent appraisers available, to whose appointment taxpayer consented.

3. **Internal revenue ⬅➔8—Taxes which were lien against realty of decedent at his death and claim against his estate held deductible from net value of estate for determining transfer tax.**

Taxes which, under Gen. St. Minn. 1913, § 2171, became a lien against realty of decedent on May 1st of the year for which levied, and hence were lien at his death and a claim against his estate, *held* deductible from gross value of the estate in determining transfer tax, in view of section 7296, notwithstanding regulations of Internal Revenue Department allowing deduction of only proportion of tax accrued to date of death.

4. **Evidence ⬅➔65—Internal revenue ⬅➔38—Every man is supposed to know law, and person voluntarily paying taxes cannot recover them.**

Every man is supposed to know the law, and a person voluntarily making return, and computing and paying his taxes, cannot invoke aid of court to recover them.

5. **Internal revenue ⬅➔38—Government held precluded from pleading estoppel of taxpayer to claim refund of amount overpaid.**

Where taxpayer's claim for refund of transfer tax voluntarily paid without deduction of taxes to which he was entitled was considered by the government, and part of the amount claimed as refund allowed, *held*, that the government was precluded from pleading estoppel of taxpayer to claim refund as to balance.

At Law. Suit for transfer tax refund by Horace Thompson and others, administrators of the estate of Horace E. Thompson, and others against the United States. Decree for plaintiffs.

Ira C. Oehler and Chas. W. Briggs, both of St. Paul, Minn., for Horace E. Thompson.

Lafayette French, Jr., U. S. Atty., and L. W. Scott, Asst. U. S. Atty., both of St. Paul, Minn.

MOLYNEAUX, District Judge. The plaintiffs base their claim for a refund, on two grounds:

(1) That certain specific lands belonging to the estate, and referred to in the complaint as being situated in the counties of Blue Earth, Cottonwood, Jackson, Martin, Murray, Nobles, Rock, and Watonwan, were overvalued as of May 1, 1919.

(2) That the taxpayer is entitled to a deduction by reason of real estate taxes that had become a lien upon the real property of the deceased at the time of his death, under the laws of Minnesota, a part only of which deduction having been allowed by the government.

[1, 2] First. I do not think that the court would be justified in holding that the lands in question were overvalued as of May 1, 1919. The administrators of the estate placed that valuation upon the property after a thorough investigation.

On February 25, 1920, the administrators of the estate, who are the plaintiffs herein, filed a return with the collector, Mr. Lynch, in which all of the above-mentioned lands were stated, on information and belief, to be worth $4,281,993.75. This valuation was placed upon the lands in question by the appraisers appointed by the probate court of Ramsey county, Minn. By agreement between the state of Minnesota and the administrators, two appraisers were appointed in each of said counties to appraise the lands, and they placed the valuation above stated upon the lands, for the purposes of the administration of the estate in the probate court. This was done after a thorough investigation, and the Thompson heirs swore

that these appraisers, who were appointed, were the best that could be found. A great deal of testimony has been introduced by the plaintiffs and by the defendant upon the question of the value of these lands. The valuation of land is always a question of judgment, and men's judgments generally differ upon valuation. The executors of the estate, after a thorough examination, investigation, and consideration, made their return to the Internal Revenue Department, placing the valuation now disputed upon the land. The Revenue Department may not accept such valuation; it is subject to their approval, but the voluntary return ought under ordinary circumstances to be of great weight against the taxpayer on valuations. The natural presumption is that he will not overvalue the estate. His interest would make him conservative.

It is not necessary to here consider how far a voluntary return is conclusive against the taxpayer. The government accepted the return on this valuation after investigating the matter. The court would hardly be justified in disturbing the valuation so placed upon this land under the testimony introduced in this case. It is a well-known fact that lands appreciated above their true value in this state during the years 1918, 1919, and 1920, and that there was much dealing in lands at that time. The evidence shows that there was a land boom in those years, covering this and other states. It is contended here by the plaintiffs that the valuation placed upon the land was a boom value, and was not the real value of the lands.

Commencing in the fall of 1920, lands depreciated in value, and that is a well-known fact, and probably went far below their real value. Lands were heavily dealt in during the years 1918, 1919, and the early part of 1920, and by reason of the numerous purchases and the indebtedness of those who had purchased lands, many lands came back upon the sellers, and that probably caused depreciation of the lands below their true value, and such depreciation still continues to a certain extent.

I am satisfied from the whole of the testimony that the valuation placed upon the lands in question is conservative. It is not the value that would be placed upon them now in the depreciated condition of lands, but the fact remains that lands were worth more in 1919 than they were previously thereto or since, for the reason that they would sell for more upon the market at that time. I have therefore come to the conclusion that the court would not be justified in, disturbing the valuation which was voluntarily returned as the value of the land, and that the values as returned are the reasonable values of the lands as of May 1, 1919.

[3] Second. At the time of the death of the decedent on May 1, 1919, there was a lien upon the real estate in question of $12,-925.54, for taxes for the year 1918, which became due the 1st day of January, 1919. The administrator paid these taxes. There was assessed against these lands as taxes for the year 1919 the sum of $45,144.14, which under the statutes of Minnesota became a lien upon real estate on May 1, 1919, payable January 1, 1920, making a total tax lien on May 1, 1919, of $58,069.68. The government allowed a deduction of $15,957.-95 for taxes.

I think the full amount of these taxes should have been deducted. Section 2171, Gen. Stat. of Minn. 1913, provides:

"*Lien of Real Estate Taxes.*—The taxes assessed upon real property shall be a perpetual lien thereon, and on all structures and standing timber thereon and on all minerals therein, from and including May 1 in the year in which they are levied, until they are paid; but, as between grantor and grantee, such lien shall not attach until the first Monday of January of the year next thereafter."

This statute was construed by the Minnesota Supreme Court in State v. Northwestern Telephone Co., 80 Minn. 17, 82 N. W. 1090. The court said:

"In the processes of raising the revenues of the state the legislature may unquestionably fix the time for the tax lien to attach. It must be held that in this statute it has done so, and, the lien having attached, it cannot be removed in any other than the legal way, viz. the payment of the same as soon as the amount is determined by the assessment and extension of the unpaid taxes."

In National Bond & Security Co. v. Hopkins, 96 Minn. 121, 104 N. W. 679, the court held it is express statutory law that the taxes assessed upon real property shall be a perpetual lien thereon and on all structures and standing timber thereon and on all minerals therein from and including May 1, in the year in which they are levied until they are paid.

It is provided in section 7296, Gen. Stat. of Minn. 1913:

"Every executor and administrator shall be entitled to the possession of all real and personal estate of the decedent which has not been set apart for the surviving spouse or children, and shall be charged with all such property. He shall receive the rents and

profits of the real estate until the estate is settled, or until delivered over, by order of the probate court, to the heirs or devisees. He shall keep in tenantable repair all houses, buildings, and fixtures thereon which are under his control. He may himself, or jointly with the heirs or devisees maintain an action for the possession of the real estate or to quiet title to the same."

In Winters v. Ellefson, 128 Minn. 3, 150 N. W. 171, the court said:

"The title to the lands vested in the heirs of decedent immediately upon his death; but our statutes gave defendant, as administrator, the right to possession for purposes of administration, as against the heirs, until settlement of the estate. Hence the duty to pay taxes devolved upon him, provided he had assets available therefor, or was in some way chargeable with having them, and provided further that ordinary prudence required such payment in order to conserve the interests of the estate."

The probate court of Ramsey county recognized this charge, when the probate judge, in allowing accounts of the executors, allowed the amount of these taxes as a proper charge against the estate. In so holding, I have in mind article 40 of the regulations in effect in the Internal Revenue Department at the time these taxes were paid, which provides:

"Art. 40. *Taxes.* Taxes upon real property should be accrued to the date of death in order to reflect in the gross estate the value of the property upon which they were imposed. This is done by ascertaining the time between the first day of the taxable period wherein the death occurs and the date of death, and computing the proportion of the entire tax upon the basis which this period bears to the entire taxable period. Such proportion of the tax had accrued upon the date of death and is deductible."

Under the laws of Minnesota the taxes in question became a lien against the estate as of May 1, 1919, and as such were a claim against the estate of the decedent on May 1, 1919. Section 403 of the Revenue Law in force at that time (Comp. St. Ann. Supp. 1923, § 6336¾d), provides as follows:

"That for the purpose of the tax the value of the net estate shall be determined—

8 F.(2d)—12

"(a) In the case of a resident, by deducting from the value of the gross estate—

"(1) Such amounts for funeral expenses, administration expenses, claims against the estate, unpaid mortgages upon, or any indebtedness in respect to, property (except in the case of a resident decedent, where such property is not situated in the United States), losses incurred during the settlement of the estate arising from fires, storms, shipwreck, or other casualty, or from theft, when such losses are not compensated for by insurance or otherwise, and such amounts reasonably required and actually expended for the support during the settlement of the estate of those dependent upon the decedent, as are allowed by the laws of the jurisdiction, whether within or without the United States, under which the estate is being administered, but not including any income taxes upon income received after the death of the decedent, or any estate, succession, legacy, or inheritance taxes. * * *"

I have concluded that, notwithstanding the regulation of the Internal Revenue Department, this tax was a legal claim against the estate and should have been deducted. I understand that the Revenue Department have reversed their former holding and now allow such taxes as deductions.

[4, 5] The claim is made by the government that the tax was voluntarily paid and therefore cannot be recovered. The authorities are to the effect that taxes voluntarily paid cannot be recovered. Every man is supposed to know the law, and, if he voluntarily makes his return, computes his taxes, and pays them, he cannot invoke the aid of the court to recover them. This is a rule of repose founded on sound public policy. 33 C. J. p. 363.

It is true that the taxpayer here made a voluntary return, computed his taxes, and failed to take the deduction for the taxes which he was entitled to take. But he made a claim for a refund, and the question was reopened by the government and considered, and he was allowed a deduction for part of the taxes, when in my judgment he should have been allowed a deduction for the whole of the taxes.

I think the government is precluded from pleading estoppel under such circumstances.