## COMMISSIONER OF INTERNAL REVENUE v. COWARD.

### No. 7246.

Circuit Court of Appeals, Third Circuit.

Feb. 23, 1940.

726

.Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key, Ellis N. Slack, and Arthur A. Armstrong, Sp. Assts. to Atty. Gen., for petitioner.

George P. Moser, of Union City, N. J., and Gustave A. Wuerfel, of Washington, D. C., for respondent.

Before BIGGS, CLARK, and JONES, Circuit Judges.

CLARK, Circuit Judge.

The controversy at bar centers about the long standing provision for the deduction from gross income of "taxes paid or accrued within the taxable year", 26 U.S.C.A. Int. Rev.Code, § 23 (c). The enactment is simple: its application is, in our circumstance, anything but simple. We must struggle, first, with the perplexing intricacies of the New Jersey scheme of real estate taxation, and second, in order to appraise the pertinent federal decisions, with the equally perplexing diversities existing between that and other local tax systems. See Paul, The Effect on Federal Taxation of Local Rules of Property, Selected Studies in Federal Taxation 1, 23, 24.

On October 1 of each year all property in the State of New Jersey is "assessed to the owner thereof with reference to the amount" then owned [1]. In the year 1933, that property included two parcels of improved income producing real estate owned by one X. But within a few months respondent had acquired (presumably by purchase) these parcels from X, one on October 16, 1933, the other on January 8, 1934. Then on January 10, 1934, the list of assessments which had been in the course of preparation since the first of October previous was filed with the county board of taxation [2]. Thereupon the board considered the revision of assessments [3] and the amount of revenue to be raised during the current year (1934) for school [4], state [4], and local [5], purposes. It fixed the local tax rate on March 10, 1934 [6], and by April 1, 1934 a revised and corrected duplicate list of assessments certified as a true (and public) record of the taxes assessed was delivered to the collector [7]. Meanwhile, however, and on February 1, 1934, the first instalment of the 1934 taxes had become payable (the amount being estimated with reference to the taxes for the previous year) [8]. The second instalment (likewise estimated) became payable on May 1, 1934, and the third and fourth (adjusted to the estimates so as to total the by then determined amount of the 1934 tax) on August and November 1, 1934, respectively [8]. Respondent paid each instalment of the 1934 tax on her properties without delay. If she had not done so, a lien for them would have attached on December 1, 1934 [9].

From this welter of chronology, the Commissioner deduces that respondent, who keeps her books on the cash basis, is not entitled to deduct from her gross income for 1934 the real estate taxes paid by her in 1934. As he reasons, the sums paid were not taxes at all, but, rather part of the cost of the two parcels. The argument is founded on precedent rather than principle, and proceeds syllogistically as follows. Major premise: one who purchases real estate upon which local taxes have accrued may not deduct the later payment of those taxes as "taxes paid". Minor premise: New Jersey real estate taxes had already accrued (at the date of assessment, October 1, 1933) on respondent's properties by the time she acquired them (October 16, 1933, January 8,

---

[1] 2 Cum.Supp. (1924) Comp.Stat. § 208—66d (202), N.J.S.A. 54:4–1.

[2] 2 Cum.Supp. (1924) Comp.Stat. § 208—66d (501), N.J.S.A. 54:4–35 to 54:4–37.

[3] 2 Cum.Supp. (1924) Comp.Stat. § 208—66d (507), N.J.S.A. 54:4–46 to 54:4–48.

[4] 2 Cum.Supp. (1924) Comp.Stat. § 208—66d (503), N.J.S.A. 18:10–19, 54:4–39, 54:4–40.

[5] 2 Cum.Supp. (1924) Comp.Stat. § 208—66d (504), N.J.S.A. 54:4–41.

[6] 2 Cum.Supp. (1924) Comp.Stat. § 208—66d (508), N.J.S.A. 54:4–52.

[7] 2 Cum.Supp. (1924) Comp.Stat. § 208—66d (509), N.J.S.A. 54:4–55.

[8] P.L.1933, C. 266, p. 716, N.J.S.A. 54:4–66.

[9] 2 Cum.Supp. (1924) Comp.Stat. §. 208—444a(6), N.J.S.A. 54:5–6.

1934). Conclusion: Respondent is not entitled to her deduction.

The Board denies the minor premise and hence reaches an opposite conclusion. Yet in doing so it does not look behind the misleading terminology of accrual employed in both premises. As a consequence all concerned succumb to the influence of a line of cases which, we think, are completely beside the point. These have to do with the interpretation of the word "accrued". That interpretation, as is expressly provided by statute, 26 U.S.C.A. Int.Rev.Code, § 48, lies in the field of accountancy on the accrual basis. The decisions are accordingly directed to the particular point of time when accounts payable (including taxes) may be listed on the taxpayer's books offsetting accounts receivable so as to fairly reflect the taxpayer's net income. See United States v. Anderson, 269 U.S. 422, 46 S.Ct. 131, 70 L.Ed. 347; 3 Paul & Mertens, Law of Federal Income Taxation 23.33. Here, on the other hand, the word under construction is "taxes" not "accrued". We must determine whether a given payment is a forced contribution to the expense of government, or whether it is something else—a voluntary capital expenditure, for example. Its solution must lie in a close analysis of the transaction of payment. It cannot, in our judgment, be solved by any rule of thumb that a property owner's payment is not one of a tax on his property because a prior owner (on the accrual basis) might have been permitted to accrue it. For that permission to accrue may depend on technical exigencies of accounting utterly foreign to the later owner's economic position in actually making the payment. That being so, our decision may be neither framed within the Commissioner's syllogism, nor guided by the accrual basis cases.

Turning then, to the decisions which have actually come to grips with the problem at bar, we find them suggesting two and only two types of transactions where real estate taxes are not "taxes" within the meaning of the statute. In the first, property is sold and the buyer promises the seller to pay certain taxes on the property. There, by express contract, the payment of taxes is part of the consideration for the sale, and not a payment qua taxes, Falk Corp. v. Commissioner, 7 Cir., 60 F.2d 204. It is also possible that such a contract might be implied in fact if the seller were personally liable for the tax, for it would be difficult otherwise to account for the buyer's munificence in paying it. See Walsh-McGuire Co. v. Commissioner, 6 Cir., 97 F.2d 983. The second transaction is the purchase of property to which a tax lien has attached. That property has in a sense two owners, the seller, and, through the lien, the state. Hence its full acquisition entails two payments, the nominal purchase price, and the taxes represented by the lien. Both have been treated alike as capital expenditures [10]. Where, on the other hand, the tax payment falls into neither of these two categories—where it neither discharges (by contract, express or implied) the personal liability of another, nor what was originally a tax lien on another's property—the deduction has been permitted, Commissioner v. Plestcheeff, 9 Cir., 100 F.2d 62.

Tested by these authorities, respondent's payment to the New Jersey tax collector in 1934 is clearly one of "taxes". There is no indication of any express contract for their payment, Mr. X, from whom she purchased, was not personally liable for them[11], and the property was not subject to any lien for them when she acquired it—indeed no such lien was possible until a year or so after title passed to her; see Empress Mfg. Co. v. Newark, 109 N.J.L. 131, 133, 160 A. 388, 389. Those authorities, however, do not deal with the New Jersey tax system and are not in strictness applicable to it. It is necessary, then, to consider the effect of one of the features of that system which is not stressed in the cases arising from other states.

Respondent's two parcels were, in theory, already "liable" for the 1934 taxes when she purchased them. That is to say, nothing which occurred after the assessment of October 1, 1933, could alter the fact that the land itself must ultimately yield those taxes either directly through the eventual

---

[10] Lifson v. Commissioner, 8 Cir., 98 F. 2d 508, certiorari denied 305 U.S. 662, 59 S.Ct. 364, 83 L.Ed. 429, rehearing denied 306 U.S. 618, 59 S.Ct. 586, 83 L. Ed. 1025; Helvering v. Missouri State Life Ins. Co., 8 Cir., 78 F.2d 778, 781; Walsh-McGuire Co. v. Commissioner, 6 Cir., 97 F.2d 983, above cited; Merchants Bank Bldg. Co. v. Helvering, 8 Cir., 84 F. 2d 478.

[11] Boyd v. Brown, 115 N.J.L. 611, 181 A. 142; Bea v. Turner, 115 N.J.Eq. 189, 169 A. 832; Borough of Wrightstown v. Salvation Army, 97 N.J.L. 89, 123 A. 607, and cases cited.

foreclosure of a tax lien, or indirectly through the medium of its then or subsequent owner's pocketbook. If, for instance, the land assumed a tax exempt status on October 2, 1933, it would, nevertheless, bear its full share of 1934 tax [12]. The presence of this liability in rem may well afford a basis for "accruing" the tax in the accounting sense [13]. But does its pre-existence deprive the purchaser who later discharges it of his income tax deduction?

■ We think not. A New Jersey statute provides that in the absence of an express agreement to the contrary the buyer of real estate may hold the seller liable for such proportion of the current year's taxes as the time between January 1 and the date of the deed bears to the full calendar year, 2 Cum.Supp. (1924) Comp.Stat. § 208—66d (514), N.J.S.A. 54:4-56. This statute does not affect the lien for unpaid taxes—the crystallization of the land's liability in rem. So the fact that the property has been assessed prior to sale, does not in the eyes of the New Jersey legislature mean that the tax resulting from that assessment is to be borne by the seller. It is always borne by the land in the first instance. But as between buyer and seller it is apportioned on the basis of the calendar year. In other words, it is considered fair that the owner of land in any given year shall be called upon to contribute to the year's revenues only a sum commensurate with the length of time the land has been held in that year—except, of course, in the rare case of the prior owner's insolvency. Such a contribution is, in our judgment, a tax in every sense of the word. And that, with the exception of $^{8}/_{365}$ of the tax on the parcel acquired on January 8, 1934, is what respondent paid here.

We may say that any other conclusion tends to work a hardship on the taxpayer hardly contemplated by the broad language of the statute. In this class of cases too great an insistence upon assessment—or, indeed, upon the lien when it relates back to the time of assessment, will often lead to puzzling anomalies. If all the property in one state were to change hands immediately after assessment, taxes levied on that assessment would, presumably, be paid by the new owners. The taxes so collected would be used by the state to defray the expenses of government. Yet should none of the inhabitants of that state be permitted a federal income tax deduction for "taxes paid"? Finally, we observe that respondent's taxable income for 1934 was for the most part derived from her real estate. With the exception, again, of $^{8}/_{365}$ of the tax on the parcel acquired January 8, 1934—that parcel yielded respondent no income for the first

---

[12] Jersey City v. Montville Township, 84 N.J.L. 43, 85 A. 838, affirmed 85 N.J. L. 372, 91 A. 1069; United States v. Mayor and Council of Hoboken, N. J., D.C., 29 F.2d 932, 940; and see, Young Men's Christian Association v. Orange, 3 N.J. Misc. 404, 128 A. 580; Longport v. Bamberger Seashore Home, 91 N.J.L. 330, 102 A. 633; Institute of Holy Angels v. Fort Lee, 80 N.J.L. 545, 77 A. 1035.

[13] A General's Counsel's memorandum so holds, saying:

"* * * the Bureau has never taken the position that insofar as the accrual of real property taxes is concerned the owner must be personally liable for such taxes.

* * * * * *

"In the normal course of events the owner of real property in New Jersey on October 1 of any given year will pay the taxes levied as of that date. This is sufficient for the purpose of accrual." GCM 15305; XIV-2 C.B. pp. 80–83

This ruling is not in harmony with the theory, generally announced, that real estate taxes "accrue" in the absence of personal liability at the time the tax lien takes effect. See Schimmel v. Commissioner, 39 B.T.A. 989, 993, and cases there cited (income tax); Thomson et al. v. United States, 8 F.2d 175 (estate tax); Claiborne v. Commissioner, 40 B.T.A. 721, 732 (estate tax), People's Water & Gas Co. v. City of Vancouver, 9 Cir., 106 F.2d 909 ("accrued" used in contract). Unlike many jurisdictions, however, the attachment of the tax lien occurs in New Jersey as the last rather than the first step in the tax cycle. Since there is no use accruing taxes which are already delinquent, the General Counsel's failure to follow the general theory is readily understandable. His position, on the other hand, is open to the practical objection that no New Jersey taxpayer knows what amount to accrue between October 1 (date of assessment) and December 31 (the end of the federal tax year), Ellis, Deductions for Accrued Taxes, 14 Tax Mag. 1471. But if the accrual date is shifted back to the time the amount of tax has been fixed, two instalments will have already become delinquent. We recite this dilemma in order to reemphasize the divergence in approach and principle between the accrual basis cases and the case at bar.

eight days of the tax year—one cannot imagine a clearer economic case for the deduction.

As indicated by our reasoning, however, respondent should not be permitted to deduct a small fraction (%₆₅) of the tax on one of her holdings. Indeed for aught that appears in the record she could proceed under the New Jersey apportionment statute and recover that sum. It follows that a slight error was committed in allowing respondent to deduct the full amount claimed in her return "for taxes". The cause is accordingly remanded to the Board of Tax Appeals for further proceedings in conformity with the views expressed in this opinion.