**UNITED STATES v. 25.936 ACRES OF LAND, MORE OR LESS IN EDGEWATER, BERGEN COUNTY, N. J., et al.**

Misc. No. 443a.

District Court, D. New Jersey.

Oct. 6, 1944.

Fred W. DeVoe, Sp. Asst. Atty. Gen., Frank H. Hall, of Trinidad, Colo., and Parker McCollester, of New York City (Sidney S. Coggan and Lord, Day & Lord, all of New York City, of counsel), for respondent, Corn Products Refining Co.

Milton T. Lasher, of Hackensack, N. J., for Borough of Edgewater.

FAKE, District Judge.

The government of the United States has taken and condemned certain real property

situate in the Borough of Edgewater, New Jersey, owned by Corn Products Refining Company.

The issues now before the court arise on an application for a part of the fund deposited in court under the award. The Borough of Edgewater contends that the court should deduct from the fund and pay to the Borough the third and fourth installments of the taxes assessed for the year 1942. The Corn Products Refining Company denies the right of the municipality to enforce any such deduction from the award and asserts its right to the sum in question.

Under the New Jersey law taxes are payable quarterly on the first days of February, May, August and November in each year. N.J.S.A. 54:4-66. On January 6, 1942, the company paid the first and second quarters in advance, thereby obtaining the benefit of a discount for prepayment; thus placing the company in the position of having paid the taxes beyond the date of taking on May 2, 1942, and clearing the same to July 1, 1942. At the time when this advance payment was made, the taxes for the current year had not yet been determined, and the amount paid was based on the amount assessed for the preceding year (1941), pursuant to N.J.S.A. 54:4-66.

■ The Company has filed claims with the Borough for a refund for alleged overpayment of taxes, basing its claims on the ground that the taxes assessed for 1942 were less than those for 1941 and it should be reimbursed for the difference, and on the further ground that it was not chargeable with the amount paid in excess of an apportionment to May 2, 1942. Inasmuch as the issues thus raised bear upon funds not under the control of the court in this proceeding, no action will be taken here in direct relation to the issues there involved, and the company is left to pursue its remedy before the Borough.

The major difficulty before the court bears upon the third and fourth quarterly payments which matured for payment on dates subsequent to the date of taking. While the problem may be thus briefly stated its solution, as will be seen, is fraught with considerable difficulty.

It becomes essential at the outset to obtain as clear an understanding as possible with relation to the procedures and their effects under the New Jersey tax laws. Particularly is this so with relation to the specific date when taxes become liens, when they begin to run against the land, and when exemptions take effect.

■■ The New Jersey tax act, N.J.S.A. 54:4-1, provides that: "All property * * * within the jurisdiction of this State not expressly exempted from taxation * * * shall be subject to taxation annually. * * * All property shall be assessed to the owner thereof with reference to the amount owned on October first in each year * * *." The same statute, N.J.S.A. 54:4-56, provides that upon the taking of real estate under the power of eminent domain "* * * [the] owner of property to be acquired shall be liable for the payment of such proportion of the taxes for the current year * * * as the time between the previous January first and * * * the date the condemning body acquired its title bears to a full calendar year." This latter provision is known as the apportionment act. It has no effect whatever as to the extent of the lien for taxes and bears only on the liability for payment as between the owner and the condemning authority. Aside from this statutory provision, real estate taxes in New Jersey create no personal liability whatever against the owners of lands. City of Camden v. Allen, 26 N.J.L. 398; Borough of Wrightstown v. Salvation Army, 97 N.J.L. 89, 123 A. 607; Rutsen Estates v. Hudson County, 102 N.J.L. 265, 131 A. 637.

The state act further provides, N.J.S.A. 54:5-6, that: "All unpaid taxes on lands * * * shall be a lien on the land on which they are assessed on and after December first of the year in which they fall due."

Nothing else appearing it might seem reasonably clear that on the date of the taking in the instant case, to wit, May 2, 1942, neither the whole nor any part of the tax for the year 1942 had become a lien against the lands taken since the statute clearly fixes the date when the taxes specifically become a statutory lien and that date had not yet arrived.

However, the problem cannot be quite so easily disposed of. Mr. Justice Swayze in Jersey City v. Montville Tp., 84 N.J.L. 43, 85 A. 838, affirmed 85 N.J.L. 372, 91 A. 1069, dealt with the tax law of the state as it was in the year 1911. Comparison of the various provisions of the tax act in force for that year with the provisions of the law in effect on May 2, 1942, discloses that, aside from the shifting of dates and the enactment of certain apportionment provisions, the statutory law remained substan-

tially the same. In that case it appeared that on May 20, 1911, the property there involved, lying in the Township of Montville, was owned by a private corporation and the law provided that it should be assessed as of that date, just as it now provides that it shall be assessed as of October 1st of the preceding year. On October 10, 1911, the private corporation conveyed the property to Jersey City. The law at that time specifically provided that taxes became a lien on and after December 20th of the year in which they were assessed. Question arose as to whether the property so taken by nontaxable municipal corporation was exempt from taxation for the entire year of 1911. It appeared then as now that exempt property was separately listed and of course was not included in the base upon which the tax rate was ascertained. Mr. Justice Swayze, relying on Shippen v. Hardin, 34 N.J.L. 79, held that the law having expressly provided that property should be assessed on May 20th, the assessment must relate to that day and property could not be assessed in the name of one who became an owner subsequent to that day. He then considers the subject of exemption and clearly holds that exemption must also be considered as of that day. He said: " * * * land is not exempt because subsequently it passes to an owner who is exempt. * * * The fact that the property is exempt at some time before the tax is payable is not important.

Under our statutory scheme, taxes are imposed not for a particular year, calendar or fiscal, but on a particular day. * * * That day in the case of the general property tax is May 20th." [84 N.J.L. 43, 85 A. 839] Moreover, he held that, even though the property passed to the nontaxable municipality before the current tax became a lien under the specific lien provision of the statute, the tax was nevertheless collectable out of the property.[1]

In a later case dealing with the law as it was in the year 1931, and here again the law for present purposes was substantially the same as in the year 1942, Mr. Justice Case, speaking for the Court of Errors and Appeals, held that where the tax had actually been fixed in amount but had not as yet become a lien under the specific provision of the statute, the condemning authority was not justified in withholding from an award the amount of the tax prorated to the date of taking. Empress Mfg. Co. v. City of Newark, 109 N.J.L. 131, 160 A. 388, 389.[2]

While in this later case it appears from an examination of the briefs filed therein that the attention of the court was directed to the rulings of Mr. Justice Swayze in Jersey City v. Montville Tp., supra, yet the opinion does not cite that case and is silent on the point that the tax and the exemption are each directed to a day certain and not to the year, calendar or fiscal, nor does it reason on the question of a cloud or

---

[1] It should be noted that the statute considered in the Montville case contained no provision for the apportionment of taxes and in closing titles in those days contracts of sale usually contained a clause providing for the apportionment of taxes, interest and fire insurance premiums, as of the date of closing, but in the absence of such a clause the burden of paying the taxes that had not become a lien under the specific provision of the statute fell upon the land but were not covered by the warranty clauses in the deeds. * Bradley v. Dike, 57 N.J.L. 471, 32 A. 132; Hallinger v. Zimmerman, 63 N.J.Eq. 100, 51 A. 936, affirmed 65 N.J.Eq. 764, 55 A. 1132.

[2] At the time the Empress Mfg. Co. case was tried, an apportionment statute had been enacted (P.L.1918, p. 871, section 514, as amended by P.L.1919, p. 118, N.J.S.A. 54:4–56; 2 Comp.St. 1910, 2185, Section 8, N.J.S.A. 20:1–15;

Comp.St.Supp. Section 208—444a(6), N.J. S.A. 54:5–6. The City of Newark had taken property by condemnation on May 10, 1930; the award was in the sum of $416,350. The City took possession on August 14, 1931, and paid Empress the amount of the award less $4,087.29. The deduction represented taxes for part of the year 1931 not then a lien under the specific provision of the statute. Empress sued for the amount deducted. Motion to strike the complaint was made before the trial court on the ground that the City had no right to make the deduction. Motion to strike was denied on the ground that the then existing apportionment act above cited authorized the deduction. On appeal to the Court of Errors and Appeals the ruling was reversed on the ground that the apportionment statute was not broad enough to apply since it did not cover as between the owner and the condemning authority, but only as between a seller and a purchaser.

---

* The grantee had to pay them to clear his land.

inchoate lien as of the date of taking. However, Mr. Justice Case expressly says: " * * * we may assume, for the purpose of this discussion, that the tax lien, if it existed at the time of the payment of the award, was deductible. * * * *But the 1931 tax was not a lien on plaintiff's land on August 14, 1931. All unpaid taxes on lands become a lien * * * on and after the 1st day of December of the year in which they fall due."* (Emphasis added.) It would seem to follow in the instant case by substitution of dates that we would arrive at the result that the tax in question here, not having ripened into a lien under the express provision of the statute on the date of taking, cannot be deducted from the amount of the award.

While it is true that the tax had not ripened into a lien under the specific statutory provision, yet it was in process of ripening. Although attention has been directed to the fact that the opinion does not deal with the question as to whether the tax would remain a cloud or inchoate lien against the property, subjecting the same to payment out of the land on conveyance by the City to a taxable party, the omission is fully justified since the City being the taxing unit does not find itself confronted with the same problem as that presented in the Montville case and that in the instant case where the taxing power and the taking authority are not vested in the same entity.

Mr. Justice Swayze points out in the Montville case, supra, "Every one purchasing land must be held to know that it is liable to taxation, and certainly if he purchases after the 1st of October (the equivalent of our June 15, 1942),[3] *and probably if he purchases after the 20th of May* (the equivalent of our October 1, 1941), that no notice will be given to him, and that the notice required by statute will be given to the owner as of the 20th of May (our October 1, 1941). * * * The lien depends, not upon any procedure as against him, but upon the procedure against a former owner. He is in the position of one buying pendente lite." (Emphasis added.) On delving into the cases an opinion is found by Judge Clark, sitting in this circuit, dealing with the subject of the deductibility of New Jersey real estate taxes in an income tax appeal, Commissioner of Internal Revenue v. Coward, 3 Cir., 1940, 110 F.2d 725, 728,

wherein he said, and quite correctly I think: "If, for instance, the land assumed a tax exempt status on October 2, 1933, it would, nevertheless, bear its full share of 1934 tax", and he cites the Montville case, supra, as sustaining that position.

■ A consideration of the scheme under which taxes are assessed and collected under the law of New Jersey in the instant case discloses that on May 2, 1942, when the government took the property, it was subject to what may be termed a cloud or inchoate lien for the entire tax for the year 1942. This is borne out by the provision of the law which fixes the date when exemptions become effective, to wit, October 1, 1941; also by the provision of law which fixes the date as to which the assessment is to be made, to wit, October 1, 1941; and as well by the provision which fixes a specific lien for the tax so laid to become effective as such on December 1, 1942. The instant the specific lien so attached it reacted to cover the lands for the taxes assessed as of October 1, 1941, for the entire year. Nothing short of payment can discharge such a lien and, as Mr. Justice Swayze said in the Montville case, the position of the government is that "of one buying pendente lite" and with notice. Such also was the view of Mr. Chief Justice Hughes in United States v. Alabama, 313 U.S. 274, 61 S.Ct. 1011, 1013, 85 L.Ed. 1327, a somewhat similar case, wherein he said: "There is no question that the State thus undertakes to create an inchoate lien upon the lands as of the tax day, a lien which is to be effective for the amount of the taxes for the ensuing year as these are fixed by the defined statutory method. * * * 'It follows the land in the hands of the vendee, all persons being chargeable with a knowledge of its existence' "; and then later in the opinion he said: "That law in creating such liens for the taxes subsequently assessed in due course and making them effective as against subsequent purchasers did not contravene the Constitution of the United States and we perceive no reason why the United States, albeit protected with respect to proceedings against it without its consent, should stand, so far as the existence of the liens is concerned, in any different position from that of other purchasers of lands in Alabama who take conveyances on and after the specified tax date."

---

[3] This date arises out of the provisions of P.L.1942, Chap. 247, Page 668, N.J.S.A. 54:4–52 note, and is the date when the tax rate was ascertained.

Finding then, as I do, that on the date of the taking here there was a cloud or an inchoate lien against the property,[4] what is the duty falling upon the court in authorizing the distribution of the fund so deposited under the award?

In the condemnation proceeding the jury was charged to bring in an award for the true value of the land on the date of the taking; therefore, when the amount of the award was fixed by the jury and deposited in court, it constituted the quid pro quo for the property, and nothing appearing to the contrary it would pass to the company. In return, again nothing else appearing, the government should receive a title free and clear of all encumbrances and clouds whether inchoate or otherwise, and the burden would rest upon the court to see to it that the government receives a marketable title. It may be argued that if this is not so there would be no point in authorizing the court to order disbursements of the fund. But as to this we shall see later.

We now meet the most serious difficulty presented in this confusing problem.

■ There is a federal statute which provides that: "The court shall have power to make such orders in respect of * * * taxes * * * if any, as shall be just and equitable." 40 U.S.C.A. § 258a. The court therefore functions clothed with equity powers and finds itself in the position of the lawyer or title reader called upon to certify as to the title. Can the court hold here that the title is unencumbered? It cannot. In the Alabama case, supra, the court looked over the steps that had been taken and referring to what should have been done in disbursing the funds under the purchase said: "It is familiar practice for grantees who take title in such circumstances to see that provision is made for the payment of taxes and the Government could easily have protected itself in like manner."

As has been set out in Footnote 1 herein, the practice in New Jersey was to provide for apportionment of taxes by a clause in the contract of sale, but no such course can be followed here since such a clause cannot be read into the condemnation proceedings.

■ However, the cloud or lien inchoate follows the land into the hands of the government and there it now remains, consummated on December 1, 1942. Here then we meet with a seeming conflict. Is it valid to hold that it is the duty of the court to see to it that the government receives a title free of such difficulties? Or is it the duty of the court to permit the cloud or inchoate lien to continue to maturity thus decreasing the sale value of the lands in the hands of the government? This brings us to a consideration of the state apportionment statute above cited which must be read in conjunction with the federal statute bearing on a just and equitable disposition of the tax. Certainly, nothing savoring of injustice or inequitable treatment can be spelled out of the apportionment statute. No valid argument can be directed against the absolute fairness which the statute contemplates in providing for an apportionment of the taxes to the date of taking. That is exactly what the company argues should be done in this case. Moreover, bearing in mind that the government here is taking property against the will of the company, no good reason can be advanced why any burden should be inflicted upon it beyond the requirements of the apportionment statute. This view is fortified by the language of Mr. Justice Hughes in the Alabama case when he said: " * * * we perceive no reason why the United States * * * should stand, so far as the existence of the liens is concerned, in any different position from that of other purchasers of lands * * *." Such also was the result of an opinion in this court by my colleague Judge Smith, in United States v. Certain Parcels of Land in the City of Clifton, etc., 57 F.Supp. 381, filed in this court on April 5, 1943, which opinion is of binding effect here. In conclusion

---

[4] This conclusion is arrived at by the following reasoning: When Mr. Justice Swayze said in the Montville case: "The effect is to make the taxes, when properly assessed a lien paramount to a deed made between the 20th day of May and the 20th day of December," it was equivalent to saying here that when the government took on May 2, 1942, it was in the position of one taking a deed on that date The 20th day of May above is the equivalent of our October 1, 1941, and the 20th day of December above is the equivalent of our December 1, 1942; hence the effect is to make the tax a lien paramount to the taking. The position taken by Mr. Justice Case in Empress Mfg. Co. v. City of Newark is not to the contrary when considered from the standpoint of a cloud or inchoate lien as distinguished from a specific matured lien consummate.

it is my thought that both equity and justice require a finding here that, notwithstanding the fact that the government took a title subject to a cloud or an inchoate lien, this court should not force a deduction from the award to satisfy it, and the burden ought to and must fall on the government to pay the balance due for the taxes of 1942 or allow the same to run against the land, with interest, until a taxable party takes the title.[5] This is just what happened in the Alabama case.

An order will be entered in conformity herewith.

---

[5] See United States v. City of Buffalo, 2 Cir., 54 F.2d 471, which deals with New York tax laws and may seem to be at variance with some of my reasons expressed above.