82 N.J. Super. 258 (1964)
197 A.2d 410
THE CITY OF EAST ORANGE, A MUNICIPAL CORPORATION OF NEW JERSEY, PLAINTIFF,
v.
DWIGHT R.G. PALMER, COMMISSIONER, STATE HIGHWAY DEPARTMENT, STATE OF NEW JERSEY, JOHN A. KERVICK, TREASURER, STATE OF NEW JERSEY, AND NEW JERSEY HIGHWAY AUTHORITY, A BODY POLITIC AND CORPORATE UNDER THE STATUTES OF NEW JERSEY, DEFENDANTS.
Superior Court of New Jersey, Chancery Division.
Decided February 1, 1964.
*259 Mr. William L. Brach, attorney for plaintiff (Mr. Norman E. Scull, appearing).
Mr. Arthur J. Sills, Attorney General, attorney for defendants Dwight R.G. Palmer and John A. Kervick (Mr. Thomas C. Mitchell, appearing).
Messrs. Pindar, McElroy, Connell & Foley, attorneys for defendant New Jersey Highway Authority (Mr. Adrian M. Foley, Jr., appearing).
HERBERT, J.S.C.
In East Orange the State Highway Department has commenced to acquire properties and demolish buildings as part of the East-West Freeway project. In connection with the same project the New Jersey Highway Authority is carrying on similar activities. This case arises out of those activities. The City of East Orange sues for relief in two forms: To enjoin the Highway Commissioner and the Authority from demolishing buildings without complying *260 with city ordinances and, especially, without first obtaining demolition permits from the city; and to require certain taxes to be paid to the city on real estate acquired for the freeway.
The city has moved for summary judgment against the defendants Palmer and Kervick and they have made a counter motion. By stipulation, claims against and defenses of the Highway Authority also are to be considered as though similar motions for and against them had been made formally.
The allegations that East Orange has power to control the State Highway Department and the Highway Authority with respect to demolition work can be disposed of easily. Town of Bloomfield v. New Jersey Highway Authority, 18 N.J. 237 (1955), considered essentially the same question of municipal power and rejected the claims of the municipality. That case and the authorities collected in it dictate the conclusion the State Highway Department and the Highway Authority are immune from the ordinance provisions which the city sues to enforce. Defendants' motions will therefore be granted as to those portions of plaintiff's case alleging that the Highway Commissioner and the Highway Authority are subject to municipal ordinances relating to demolition work.

* * * * * *
The demand for tax payments is limited in scope. The city contends that property privately owned on any October 1st  the statutory assessment date  is subject to taxes for the whole of the following calendar year no matter what change in ownership occurs before the end of that year. Defendants concede taxes must be paid up to the closing of title; they claim full exemption beyond that point in spite of an assessment made as of the October 1st preceding the closing. There are allegations made and admitted in the pleadings which furnish a specific example. The State purchased property at 53 South Harrison Street, East Orange, taking title on February 4, 1964. Is the city entitled to complain about the refusal of *261 the State to pay, or to take effective steps to assure the payment of, anything more than taxes for the month of January and the first four days of February?
Strictly speaking, the question just stated is not one of tax exemption. The city agrees with the general proposition that the State and the Highway Authority are exempt from taxation on land acquired for this project; the controversy here is over the date on which exemption begins. As to some tax-free owners, it has been held that titles taken during a year for which an assessment has been made are subject to taxes for the whole of that year. In Shelton College v. Borough of Ringwood, 48 N.J. Super. 10 (App. Div. 1957), the plaintiff's property, though acquired on February 16, 1954, was held subject to taxes for the entire year. The essential reasoning of the court was:
"Ever since Jersey City v. Montville Tp., 84 N.J.L. 43, 85 A. 838 (Sup. Ct. 1913), affirmed on the opinion below in 85 N.J.L. 372, 91 A. 1069 (E. & A. 1913), it has been uniformly recognized by the tax administration authorities of this State that the status of property for purposes of exemption vel non is conclusively determinable upon the basis of whether or not the statutory criteria of ownership and use were met on the day fixed by the statute as the assessing date, which now and long past has been October 1 preceding the tax year. N.J.S.A. 54:4-1; and see N.J.S.A. 54:4-23, 35. Application of that test determines the right of exemption or the burden of taxation for the entirety of the ensuing tax year (but see L. 1949, c. 144, infra)." (at p. 11)
Fifty-odd years ago, when May 20 rather than October 1 was the tax assessment date, Jersey City purchased from a private owner land in the Township of Montville. The city then sued to establish that its tax-exempt status  apparently unchallenged  should take effect on October 10, the day title passed. Rejecting the city's claim, the Supreme Court held the assessment made as of May 20 preceding the transfer would have to be honored for the following tax year just as though the property in question had remained in private hands. Jersey City v. Montville Tp., 84 N.J.L. 43 (Sup. Ct. 1913), affirmed o.b. 85 N.J.L. 372 (E. & A. 1913) *262 supra. Among other things in the opinion are these comments:
"Every one purchasing land must be held to know that it is liable to taxation * * *. He must therefore be held to know that his right may be subjected to a lien without notice. The lien depends, not upon any procedure as against him, but upon the procedure against a former owner. He is in the position of one buying pendente lite." (at p. 45)
The same problem has come up in another form. Jabert Operating Corp. v. City of Newark, 16 N.J. Super. 505 (App. Div. 1951). There the Salvation Army, enjoying exempt status, owned property on October 1, 1948 and conveyed to Jabert Operating Corp. on November 9, 1948. The result was that Jabert, an ordinary private business corporation, escaped paying taxes for the year 1949. The character of ownership on the assessment date absolved the new owner from taxes for the whole of the following year. This situation was subsequently corrected by statute (L. 1949, c. 144; N.J.S.A. 54:4-63.26 et seq.), but only as to lands passing from exempt to non-exempt ownership; nothing was provided in the act about transfers from private to exempt parties.
It is urged for defendants, however, that three New Jersey decisions support an exemption from tax which will take effect the moment title passes: Borough of Edgewater v. Corn Products Refining Co., 136 N.J.L. 220 (Sup. Ct. 1947), affirmed 136 N.J.L. 664 (E. & A. 1948); Milmar Estate v. Borough of Fort Lee, 36 N.J. Super. 241 (App. Div. 1955); New Jersey Highway Authority v. Henry A. Raemsch Coal Co., Inc., 40 N.J. Super. 355 (Law Div. 1956). All of these involved acquisitions of title by eminent domain and in that respect are distinguishable from Jersey City v. Montville Tp., supra, and Shelton College, supra, where there were voluntary conveyances. There is an added distinction for Milmar Estate v. Fort Lee: the effective date of transfer was, as the court held, prior to October 1 and so the assessment was a nullity.
There are no allegations in the pleadings of the present case that the State or the Highway Authority has taken properties *263 by eminent domain on which the city claims taxes for a whole tax year. Pleadings, briefs and oral argument have presented the tax question as it relates to titles acquired by deed. However, to say only that the New Jersey decisions cited by the defendants involved condemnations while this case involves deeds would be rather inadequate discussion of the defensive arguments, when both Borough of Edgewater v. Corn Products Refining Co., and New Jersey Highway Authority v. Henry A. Raemsch Coal Co., supra, resulted in effective tax exemption commencing when title passed, and some of the reasoning by which that result was reached could be applied to voluntary transfers.
In Corn Products Refining Co., supra, a large part of the tax bill for the year 1942 was prepaid. Then on May 2, 1942 title of the property passed by eminent domain to the United States. After that, the amount of the condemnation award having been deposited with the clerk of the federal court, the Borough of Edgewater applied for an order directing the clerk to pay it an amount large enough to satisfy the unpaid balance of taxes for the whole of the year 1942. The municipality cited in support of its application Jersey City v. Montville Tp., supra. The district judge, relying in part upon that case, held the fund in court should not be charged with any taxes beyond the date title passed, and went on to say the ownership of the United States was "subject to a cloud or an inchoate lien" for taxes for the balance of the year, "and the burden ought to and must fall on the government to pay the balance due for the taxes of 1942 * * *" United States v. 25.936 Acres of Land, 57 F. Supp. 383, 388 (D.C.N.J. 1944).
On appeal it was held that federal eminent domain law had transferred the land to the United States free of anything in the nature of a lien or charge for taxes; that the District Court had erred in concluding the borough had no claim upon the condemnation award for the unpaid balance of 1942 taxes; and there was a direction for the borough and Corn Products Refining Co. to go into the New Jersey courts to *264 settle the "vexatious" question of whether or not a lien in favor of the borough for the unpaid taxes for the period May 2-December 31, 1942 should attach to the fund in court. United States v. 25.936 Acres of Land, 153 F.2d 277 (3 Cir. 1946).
There followed Borough of Edgewater v. Corn Products Refining Co., supra, in which both the New Jersey Supreme Court and the Court of Errors and Appeals held the Corn Products Company responsible for taxes up to the passage of title, but ordered the balance of the real estate tax prepayment to be refunded to it. This result, in effect, deprived the municipality of taxes after May 2 on the land in question, because the Circuit Court of Appeals of the Third Circuit, as noted above, had already decided the borough could not assert a claim for that period against the land or against the United States as owner of it.
The Court of Errors and Appeals in the Corn Products case cited Jersey City v. Montville Tp., but made no express statement about modifying or overruling it. The court said:
"Here, the first two installments for the current year had been paid and there was no delinquent taxes when the United States acquired title to the lands. And, if we assume arguendo that there was then a lien upon the lands for the undetermined balance of taxes for the current year, the tax liability is nevertheless apportioned on a pro rata basis as provided by R.S. 54:4-56." (136 N.J.L., at p. 667)
In Raemsch Coal Co., supra, R.S. 54:4-56 was again referred to (40 N.J. Super., at p. 360), and the court held the Town of Bloomfield had no claim upon the condemnation award for taxes beyond November 24, 1953, the date title effectively passed to the Highway Authority. The rule of Borough of Edgewater v. Corn Products Refining Co., supra, having been stated in a case which arose out of an in rem proceeding under federal eminent domain law, was thus applied to a taking under New Jersey law which requires the condemning plaintiff to proceed against the parties holding interests in the land rather than against the land itself.
*265 If R.S. 54:4-56 is the basis for the rule that a municipality may collect taxes only to the date title passes in an eminent domain proceeding, then since the statute applies by its terms to voluntary transfers as well as eminent domain, it may be argued that the right to taxes should be cut off in the same way on the day an exempt buyer acquires title from a non-exempt seller by deed.
Whatever the force of the argument just suggested or, more broadly, whatever may be said about applying here the reasoning followed in Corn Products Refining Co. and Raemsch Coal Co., the sum total of all that will not be enough in my view to permit a trial court to do anything but apply the rule of Jersey City v. Montville Tp. in cases where the tax-exempt owner has acquired title by delivery of a deed. Then, too, the strong statement of that rule by the Appellate Division in the Shelton College case is more recent (1957) than any of the New Jersey decisions cited by the defendants on this point. My conclusion is that, except in those cases where title passes in eminent domain proceedings, the tax exemptions of the State and of the Highway Authority do not become effective until the end of the full tax year immediately following the last assessment date on which taxable ownership still prevailed. In terms of the specific case alleged in the complaint, and referred to earlier, although the State took title to 53 South Harrison Street on February 4, 1963, taxes for the whole of 1963 are due to the city, the property having been owned by a non-exempt owner on October 1, 1962.
I have also given consideration to the thought that the State, as sovereign, may possibly have a stronger and broader exemption from local taxation than the counties, municipalities and other municipal corporations which it has created, and the nonprofit corporations of various types on which it has conferred exempt status. However, there is nothing in the opinions of Jersey City v. Montville Tp. or the Shelton College case to indicate that the responsibility imposed for payment of taxes for a full year depends in any degree upon *266 the identity and characteristics of a particular tax-exempt owner. There also appears to be significance in the fact that the State, counties, school districts and taxing districts have all been grouped together in and given tax exemption by N.J.S.A. 54:4-3.3. Nonprofit organizations such as Shelton College are given exemption by another section of the same chapter: N.J.S.A. 54:4-3.6. The N.J. Highway Authority Act does have in it a section giving tax exemption in broad terms (N.J.S.A. 27:12B-16), but the Authority is only one kind of municipal corporation and has a weaker claim to special tax treatment than a sovereign state. Our Supreme Court, moreover, has given some indication that the exemption of the Highway Authority is to be evaluated by ordinary standards. See New Jersey Turnpike Authority v. Washington Township, 16 N.J. 38 (1954), in which the almost identical tax exemption section of the N.J. Turnpike Authority Act of 1948 was dealt with. These factors satisfy me that both the State and the Highway Authority should be treated like any other tax-exempt owner in the application of the rule of Jersey City v. Montville Tp., supra, while that rule remains in force.
There is one more point to be considered. Defendants Palmer and Kervick argue that the doctrine of sovereign immunity requires a decision in their favor no matter what the ruling might otherwise have been. They cite Strobel Steel Construction Co. v. State Highway Commission, 120 N.J.L. 298 (E. & A. 1938). The principle applied there, however, does not bar all actions. In Haycock v. Jannarone, 99 N.J.L. 183 (E. & A. 1923), a property owner who claimed that highway improvements encroached upon his land was not permitted to sue the State's contractor for damages in trespass, but the court pointed out he could proceed by mandamus against the State Highway Commission to compel it to initiate condemnation proceedings to fix the compensation due to him for the taking of his land. Gould v. State Highway Commission, 112 N.J. Eq. 389 (Ch. 1933), held a suit in the Court of Chancery was not the appropriate *267 remedy for a plaintiff whose property had allegedly been taken without compensation, but that mandamus was. State by and through Adams v. New Jersey Zinc Co. and Ferber, 40 N.J. 560 (1963), also may be referred to; it involved the right of holders of an option to insist upon being parties to an eminent domain action brought to acquire property which was the subject of the option.
The suit of the City of East Orange is not one against the State or against state officials to establish liability and impose damages. It resembles, I think, a proceeding brought in connection with the taking of property to compel the State to initiate condemnation and thereby to meet an obligation which has already been imposed by the State upon itself. What the State has created through its own tax statutes, as those statutes have been construed in Jersey City v. Montville Tp., supra, may be compared for this purpose with the duty imposed by the Constitution to pay for private property taken for public use. In both situations responsible officials should be subject to suit to compel appropriate steps to be taken to carry out the State's obligation. My conclusion on this point is that the doctrine of sovereign immunity is not available to the defendants Palmer and Kervick. In a general way this conclusion is fortified by Professor Jaffe's recently published study "Suits Against Governments And Officers: Sovereign Immunity," 77 Harv. L. Rev. 1; continued under the subtitle "Damage Actions," 77 Harv. L. Rev. 209.
No objection has been made by any party that the portions of this case which relate to taxes should be severed and sent to the Law Division, there to become a proceeding in lieu of prerogative writs, and I have, therefore, decided all of the questions presented.
An order will be entered in favor of the city on the tax questions. It should be drafted to provide in appropriate form that the State and the Highway Authority pay taxes on all property acquired, other than by condemnation, to the end of the full tax year following the last assessment against a private owner, and I hope that no trial will be necessary to *268 establish the dollar amounts to be paid. If there is no real dispute as to those amounts, which appears to be the fact, then the order will for all practical purposes be a final one and there should be no difficulty about using is as a basis for an appeal. I mention an appeal because, in the absence of an appellate ruling in New Jersey fixing the date on which the tax exemption of the State takes effect when property has been acquired by deed, and with many parcels of real estate being purchased, it seems desirable to have a more definitive answer than can be given at the trial level. This same comment applies in some degree to the exemption of the Highway Authority.
It is hardly necessary to add that nothing in this opinion is intended to bar the prosecution of any tax appeals that may be pending or may hereafter be taken.
No costs.